UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MICHAEL E. BEYCHOK, et al.,    )
       *Plaintiffs*    )
       )
v.    )
    )  Case No. 2:21-cv-14112-JXN-CLW
ROBERT A. BAFFERT and BOB    )
BAFFERT RACING STABLES,    )
INC.,    )
       *Defendants*    )

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

W. Craig Robertson III
WYATT, TARRANT & COMBS, LLP
250 West Main Street, Suite 1600
Lexington, Kentucky  40507-1746
Telephone:  (859) 233-2012
Email:  wrobertson@wyattfirm.com

Gavin J. Rooney
LOWENSTEIN SANDLER, LLP
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone:  (973) 597-2500
Email:  grooney@lowenstein.com

*Counsel for Defendants, Robert A. Baffert
and Bob Baffert Racing Stables, Inc.*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION ....................................................................................1

FACTS ....................................................................................................1

ARGUMENT ...........................................................................................2

I.  Plaintiffs' Claims Should Be Dismissed Because This Court Does Not Have Personal Jurisdiction Over the Baffert Defendants ...........................................2

   A.  The Civil RICO statute does not provide jurisdiction over the Baffert Defendants ..............................................................................2

   B.  Plaintiffs have not established personal jurisdiction over the Baffert Defendants ...............................................................................6

II.  Plaintiffs' Claims Are Not Justiciable. ...........................................9

III.  Plaintiffs Fail to State a Civil RICO Claim as a Matter of Law .................11

   A.  Plaintiffs lack statutory standing to assert a Civil RICO claim ..............11

   B.  Plaintiffs have failed to allege a qualifying predicate act ......................13

IV.  Plaintiffs' State Law Fraud Claims Fail as a Matter of Law ......................15

CONCLUSION .....................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Americans for Prosperity v. Grewal*,
   2019 WL 4855853 (D.N.C. Oct. 2, 2019) ........................................14

*Bridge v. Phoenix Bond & Indem. Co.*,
   553 U.S. 639 (2008)........................................................................13

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)..........................................................................7

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*,
   788 F.2d 535 (9th Cir. 1986) .............................................................5

*CDK Global, LLC v. Tulley Automotive Grp., Inc.*,
   489 F.Supp.3d 282 (D.N.J. 2020)....................................................15

*Doug Grant, Inc. v. Greate Bay Casino Corp.*,
   232 F.3d 173 (3d Cir. 2000) ............................................................13

*Durr Mech. Constr., Inc. v. PSEG Fossil, LLC*,
   516 F.Supp.3d 407 (D.N.J. 2021)....................................................15

*Fairfax Fin. Holdings Ltd. v. S.A.C. Capital Mgmt., LLC*,
   450 N.J. Super 1 (2017) ..................................................................14

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
   --- U.S. ---, 141 S. Ct. 1017 (2021).................................................8

*Goodyear Dunlop Tires Ops., N.A. v. Brown*,
   564 U.S. 915 (2011).........................................................................8

*In re Doug Grant, Inc. v. Greate Bay Casino Corp.*,
   3 F.Supp.3d 518 (D.N.J. 1998)........................................................12

*Kentucky Horse Racing Comm'n v. Fuller*,
   481 S.W.2d 298 (Ky. 1972).............................................................10

*Konover Constr. Corp. v. East Coast Constr. Servs. Corp.*,
   420 F.Supp.2d 366, 370 (D.N.J. 2006) ................................................................15

*Kovalev v. Stepansky*,
   835 F.App'x 678 (3d Cir. 2020) ........................................................................12

*Laurel Gardens, LLC v. McKenna*,
   948 F.3d 105 (3d Cir. 2020) .......................................................................... 3-5

*PT United Can Co. v. Crown Cork & Seal Co.*,
   138 F.3d 65 (2d Cir. 1998) ...............................................................................4

*Simon v. Taylor*,
   2013 WL 5934420 (D.N.M. Sept. 26, 2013).......................................................13

*Spokeo v. Robins*,
   578 U.S. 330 (2016)...............................................................................10, 11

*State v. Sumulikoski*,
   110 A.3d 859 (N.J. 2015) ...............................................................................14

*TransUnion, LLC v. Ramirez*,
   --- U.S. ---, 141 S. Ct. 2190 (2021)...........................................................10, 11

*Waldman v. Delaware Park. LLC*,
   2000 WL 33416863 (D.N.J. May 19, 2000).........................................................7

*White v. Turfway Park Racing Ass'n*,
   718 F.Supp. 615 (E.D. Ky. 1989)................................................................9, 10

## STATUTES

15 U.S.C. § 3004........................................................................................7
18 U.S.C. § 1952......................................................................................14
18 U.S.C. § 1961......................................................................................14
18 U.S.C. § 1964......................................................................................12
18 U.S.C. § 1965.................................................................................... 2-5
N.J.S.A. 2C:21-11................................................................................13, 14

## RULES AND REGULATIONS

810 KAR § 1:011 ................................................................................................9
810 KAR § 4:040 ................................................................................................9
810 KAR § 4:060 ................................................................................................9
810 KAR § 6:030E ..............................................................................................9

Defendants Robert A. Baffert ("Baffert") and Bob Baffert Racing Stables, Inc. ("Baffert Racing") (the "Baffert Defendants"), hereby state as follows for their Reply Memorandum in Support of their Motion to Dismiss the Amended Complaint filed by Plaintiffs Michael E. Beychok, et al. (the "Plaintiffs"):

## **INTRODUCTION**

Plaintiffs' Response is a desperate conglomeration of highly inflammatory statements (many of which are not even alleged in the Amended Complaint) designed to create a smokescreen in an effort to get the Court to take its eye off the ball. This Court should not be distracted. No matter how much outrageousness Plaintiffs throw on the wall in the hopes that something will stick, they cannot avoid three fundamental black letter law principles that mandate dismissal of their Amended Complaint. First, this Court lacks personal jurisdiction over the Defendants. Second, as disgruntled gamblers, Plaintiffs' have no standing and fail to present a justiciable claim. Finally, each and every court that has considered Civil Rico claims in the context of gambling loses has rejected those claims as a matter of law.

## **FACTS**

While the Baffert Defendants understand that a factual inquiry is not relevant at the current time, they do want to make sure that the Court understands they completely reject Plaintiffs' abusive and highly inflammatory Response. Plaintiffs purposefully misrepresent Baffert's Hall of Fame record and make numerous libelous

statements.  Notwithstanding Plaintiff's improper liberties, the Baffert Defendants will focus on the actual allegations of the Amended Complaint, as applied to well established case law, all of which clearly demonstrates that Plaintiffs' Amended Complaint must be dismissed.

## **ARGUMENT**

### I.   **Plaintiffs' Claims Should Be Dismissed Because This Court Does Not Have Personal Jurisdiction Over the Baffert Defendants.**

#### A.   **The Civil RICO statute does not provide jurisdiction over the Baffert Defendants.**

Plaintiffs' primary jurisdictional argument is that Sections 1965(a) and (b) of the RICO statute broadly confer "nationwide jurisdiction" over all defendants, and they may accordingly hale Baffert into any forum of their choosing. This grossly misreads the statute and ignores the Third Circuit's binding precedent on this exact issue. The RICO statute only provides for "nationwide service" on "other" defendants. The Third Circuit has ruled on the meaning of this language and held that, in order for a plaintiff to invoke **nationwide jurisdiction**, he must first establish (1) personal jurisdiction over at least one defendant under the traditional minimum contacts analysis, and (2) that the "ends of justice" require exercising nationwide jurisdiction over the "other" defendants. 18 U.S.C. § 1965(b). Plaintiffs' do not come close to meeting these standards. Thus, Plaintiffs' argument that the RICO statute

somehow trumps the jurisdictional analysis set forth in the Baffert Defendants' initial memorandum is simply wrong.

In *Laurel Gardens, LLC v. McKenna*, 948 F.3d 105 (3d Cir. 2020), the Third Circuit acknowledged an existing circuit split concerning the scope of personal jurisdiction under RICO. *Id.* at 116. While two circuits—the Fourth and Eleventh Circuits (the "minority" approach)—broadly construe RICO similar to Plaintiffs in this case, five other circuits—the Second, Seventh, Ninth, Tenth, and D.C. Circuits (the "majority" approach)—have interpreted Section 1965 far more narrowly. *Id.* at 117. In *McKenna*, the Third Circuit joined the majority approach "based on the language and structure of the RICO provision itself and the relative absence of reasoning in support of the minority approach." *Id.* The Third Circuit flatly rejected Plaintiffs' notion that the RICO statute establishes personal jurisdiction over any person anywhere a plaintiff chooses:

> Reading all of the subsections of § 1965 together, the court finds that § 1965 *does not provide for nationwide jurisdiction over every defendant in every civil RICO case, no matter where the defendant is found*. First, § 1965(a) grants personal jurisdiction over an initial defendant in a civil RICO case to the district court for the district in which that person resides, has an agent, or transacts his or her affairs. *In other words, a civil RICO action can only be brought in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant*.
>
> Second, § 1965(b) provides for nationwide service and jurisdiction over "other parties" not residing in the district who may be additional defendants of any kind... *This jurisdiction is not automatic but requires a*

3

> *showing that the "ends of justice" so require.* This is an unsurprising limitation. There is no impediment to prosecution of a civil RICO action in a court foreign to some defendants if it is necessary, but the first preference, set forth in § 1965(a), is to bring the action where suits are normally expected to be brought. *Congress has expressed a preference in § 1965 to avoid, where possible, haling defendants into far flung fora.*

*McKenna*, 946 F.3d at 117-18 (quoting *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71-72 (2d. Cir. 1998)(emphasis added).

In other words, Plaintiffs must first establish personal jurisdiction via the traditional minimum contacts test over at least one defendant before they can argue that the "ends of justice" should allow them to obtain jurisdiction over "other" defendants. "**When** a civil RICO action is brought in a district court where **personal jurisdiction can be established over at least one defendant**, summonses can be served nationwide on other defendants if required by the ends of justice." *Id.* at 120 (emphasis added). The "structure of § 1965 as well as the 'other parties' language of subsection (b) **clearly require the presence of at least one defendant that meets the traditional contacts test**." *Id.* (emphasis added).

As explained below and in Baffert's original Motion, Plaintiffs have failed to establish personal jurisdiction in New Jersey over either of the Baffert Defendants. Baffert is a California resident and Baffert Racing is a California corporation with a principal place of business in California. This matter concerns a horse that trained in California and raced in Kentucky. Baffert's contacts with New Jersey are virtually

4

non-existent. They merely consist of Baffert participating in two New Jersey races (one in 2019 and one in 2020) over the past five years amounting to .00131% of his business. [DE 30 at 8.] More importantly, none of these contacts relate in any way to the facts alleged in Plaintiffs' Amended Complaint. Simply put, Plaintiffs have not come close to establishing personal jurisdiction over any single defendant in New Jersey and thus, Section 1965(b) does not apply.

Even if Plaintiffs could establish personal jurisdiction in this case (and they cannot), the RICO analysis is incomplete—they must still prove that haling the Baffert Defendants into this forum is required by the "ends of justice." To this end, the *McKenna* Court stated that a "plaintiff must also establish that there is *no other district court that would have traditional personal jurisdiction over all of the defendants*." *Id.* at 120 (quoting *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986)) (emphasis added).

In this case, the "ends of justice" plainly do not justify this Court exercising jurisdiction. This is not a case where the Plaintiffs cannot identify a single district court that would have personal jurisdiction over all defendants. Both of the Baffert Defendants are California residents and subject to personal jurisdiction in California. In fact, Plaintiffs *already* brought this case in the Central District of California— which unquestionably possessed personal jurisdiction over the Baffert Defendants—

before inexplicably dismissing that action and re-filing in New Jersey. Plaintiffs cannot claim that the "ends of justice" require jurisdiction in New Jersey when they are responsible for moving this case from a forum with jurisdiction to one without.

Under any conceivable application of the civil RICO statute and in light of the Third Circuit's binding opinion that shatters Plaintiffs' theory, there is simply no basis to apply nationwide RICO jurisdiction to the Baffert Defendants in this case.

### B.    Plaintiffs have not established personal jurisdiction over the Baffert Defendants.

As the Baffert Defendants described in their Motion, Plaintiffs cannot establish either general or specific jurisdiction over them. The Baffert Defendants are California residents and primarily conduct their business in California. While Baffert has raced at Monmouth Park in New Jersey twice in the last five years, those races amount to a minute fraction of his business (0.00131%) and certainly cannot be deemed "continuous and systematic" contacts for purposes of general jurisdiction. [DE 30 at 8.] And of course, the specific allegations in the Amended Complaint about Baffert and MEDINA SPIRIT only concern conduct in California and Kentucky without even a tangential nexus to New Jersey.

With the walls closing in, Plaintiffs desperately turn to news articles (not referenced in their Amended Complaint and in some instances ten years old) that praise Baffert and quote Monmouth officials as stating they wished he raced in New Jersey

more frequently. (Response, p. 13). Statements by Monmouth officials pleading with Baffert to come race there more often hardly creates personal jurisdiction over him.

Beyond that, Plaintiffs further suggest that "simulcasts of races," and "pari-mutuel betting" in New Jersey somehow justify jurisdiction. This is without merit. First, Baffert has no control over where a simulcast signal is sent—that is a matter determined solely by the track, horsemen's group, and racing commission in each racing jurisdiction. *See* 15 U.S.C. § 3004. Second, the absurd consequence of Plaintiffs' position would be that *any* professional athlete could be haled into any jurisdiction by a disgruntled gambler—particularly as sports betting is legalized across the country—simply because of national television. The fact that the Kentucky Derby was broadcast in New Jersey does not somehow equate to Baffert "purposefully availing" himself of New Jersey's laws. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Moreover, none of the cases in Plaintiffs' Response support jurisdiction over the Baffert Defendants. Most notably, the Response relies on *Waldman v. Delaware Park, LLC*, 2000 WL 33416863 (D.N.J. May 19, 2000) and other similar cases, for the notion that a racetrack's simulcast signal and revenues associated with New Jersey wagering is sufficient to establish jurisdiction. [DE 30 at 11-12.] There is a major

difference, however, in claims against a racetrack—which controls the track's simulcast signal and accepts the wagers—as opposed to claims against an individual who happened to be a participant in a race.

Plaintiffs' comparison to *Ford Motor Co. v. Montana Eighth Judicial District Court*, --- U.S. ---, 141 S.Ct. 1017 (2021) is equally unpersuasive. That case found personal jurisdiction against a multinational Fortune 500 company that manufactures millions of automobiles each year and maintains dealerships in every state in the country. As such, the court easily held that Ford intentionally directed its conduct to the forum. *Id.* at 1024-26. Bob Baffert is not Ford Motor Company.

Plaintiffs' Response is barren of any meaningful connection between the facts alleged in the Amended Complaint and New Jersey. The law is clear that there must be case-specific contacts with the forum state. *See Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011) (specific jurisdiction is confined to adjudication of "issues deriving from, on connected with, the very controversy that establishes jurisdiction"). That is not established by Baffert's rare and irrelevant New Jersey racing activities. Even if one were to accept Plaintiffs' tinfoil conspiratorial premise that Baffert engaged in a nationwide racketeering scheme to defraud individuals he never met, Plaintiffs would still have to establish that at least some of the alleged illicit conduct actually occurred in New Jersey. They have utterly failed to do so. This matter has zero connection to New Jersey and it must be dismissed.

## II.    Plaintiffs' Claims Are Not Justiciable.

Plaintiffs' Amended Complaint should also be dismissed because their claims are not justiciable. As the Baffert Defendants have explained, there is no current case and controversy because (1) the entirety of Plaintiffs' claims rest on a speculative presupposition that MEDINA SPIRIT will be disqualified at some future date potentially years from now; and (2) their exact alleged injury is not recognized as a viable cause of action under both statutory and common law.

While Plaintiffs disclaim the applicability of Kentucky regulations—which unambiguously reject any attempt to alter pari-mutuel payouts—those same regulations are the source of their *entire case*, which is founded upon the (incorrect) premise that MEDINA SPIRIT's participation in the Kentucky Derby violated Kentucky's rules of racing. In other words, the only way MEDINA SPIRIT is disqualified and the order of finish of the Kentucky Derby is altered is if the Kentucky Horse Racing Commission makes that determination under Kentucky's laws and regulations. Those same regulations, however, expressly state that all payouts are final and individual pari-mutuel gamblers have no injury. *See* 810 KAR § 4:040, Section 17; 810 KAR § 6:030E, Section 10(2); 810 KAR § 1:011, Section 10(2); 810 KAR § 4:060, Section 1(1). Plaintiffs cannot have it both ways.

Similarly, Plaintiffs' attempts to distinguish *White v. Turfway Park Racing Ass'n, Inc.*, 718 F.Supp. 615 (E.D. Ky. 1989) fall flat. Contrary to their mistaken

interpretation, the plaintiffs in *White* did in fact expressly ask the court to change the outcome of the race. *Id.* at 618 ("The plaintiff is essentially asking the court to determine that the winner of the … race … was ineligible, and that the second place horse should have been declared the official winner of that race."). The putative class claim in *White* is remarkably similar to Plaintiffs' in this case, asking the court to either disqualify the winning horse or to consider their potential pari-mutuel payout as damages. *Id.* at 617-18. The Eastern District of Kentucky appropriately understood "[s]uch a determination is one that is inappropriate for a federal court to make." *Id.* at 618. The *White* Court correctly held that all bettors are bound by the rules of racing, which include Kentucky's clear rule that gamblers have no legal right to seek redress from anyone—even in the event of a post-race disqualification. *Id.* at 619-20; *see also Kentucky Horse Racing Comm'n v. Fuller*, 481 S.W.2d 298 (Ky. 1972). *White* recognized that Kentucky's rules of racing completely govern every aspect of Kentucky horseracing and the rules apply to all parties. Those rules plainly deny standing to any aggrieved gambler attempting to either directly or indirectly alter the pari-mutuel payout.  If the Plaintiffs did not like said rules, they were free not to wager.

Article III requires a plaintiff's injury to be "concrete," meaning "real, and not abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016). In *TransUnion, LLC v. Ramirez*, 141 S.Ct. 2190 (2021), the Supreme Court recently clarified what makes

an alleged injury "concrete" for purposes of Article III standing. To do so "courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* at 2204 (quoting *Spokeo*, 578 U.S. at 341).

Here, Plaintiffs' Amended Complaint fails to establish a traditional basis for standing in two respects. First, American courts—including *this* Court—have consistently denied standing for individual gamblers claiming financial injuries stemming from their gambling losses. [DE 22-1 at 18-21.] Second, and equally important, courts do not entertain purely speculative claims that are not ripe. The simple fact is that, unless MEDINA SPIRIT is disqualified as the official winner of the Kentucky Derby—which is hardly a foregone conclusion and will take years to litigate—Plaintiffs have no injury. Even if MEDINA SPIRIT is disqualified, as set forth above, Plaintiffs still have no compensable injury as a matter of law. Plaintiffs' claimed injury is insufficiently concrete and thus, they lack Article III standing to assert their claims.

## III.    Plaintiffs Fail to State a Civil RICO Claim as a Matter of Law.

### A.    Plaintiffs lack statutory standing to assert a civil RICO claim.

Beyond their lack of Article III standing, Plaintiffs' Amended Complaint also insufficiently establishes Civil RICO's even more exacting injury-in-fact requirement. In their opening Memorandum, the Baffert Defendants pointed to a mountain

of case law throughout the country that consistently holds disgruntled gamblers lack statutory standing to assert Civil RICO claims as a matter of law. [DE 22-1 at 18-21.] Plaintiffs fail to even address those cases.

Civil RICO requires a plaintiff to "allege that he was 'injured in his business or property' by reason of a violation" of RICO. 18 U.S.C. § 1964(c); *Kovalev v. Stepansky*, 835 F. App'x 678 (3d Cir. 2020). This Court has plainly held that "gambling income is far too speculative to constitute compensable injury to business or property." *In re Doug Grant, Inc. v. Greate Bay Casino Corp.*, 3 F.Supp.3d 518, 534 (D.N.J. 1998). That is because "there is no property right in the opportunity to gamble under any circumstances," with "any such loss [being] far too speculative to be compensable." *Id.* Every court to ever consider civil RICO claims asserted by aggrieved gamblers has rejected Plaintiffs' claims for that exact reason. [*See* DE 22-1 at 18-21 (collecting cases).] Plaintiffs' are not the first ones to try this; their failure to point to even one decision anywhere in the country supporting their position tells this Court all it needs to know.

The general rule developed across the country over three decades sensibly applies to this case as well; it is impossible to determine what would have happened in the Kentucky Derby if MEDINA SPIRIT never raced, as Plaintiffs alleged should have happened. Even still, Plaintiffs must convincingly establish that Baffert was both the but-for and proximate cause of their alleged injury. *Bridge v. Phoenix Bond*

& *Indem. Co.*, 553 U.S. 639, 654 (2008). This Circuit refuses to find RICO causation in favor of gamblers as a result of their voluntary participation in inherently risky behavior. *See Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 187-88 (3d Cir. 2000); DE 22-1 at 20-21 (collecting cases).[1] This Court should not reinvent the wheel. Plaintiffs have failed to assert a qualifying injury under civil RICO and thus, their claims should be dismissed.

### B. Plaintiffs have failed to allege a qualifying predicate act.

The Baffert Defendants have further explained that Plaintiffs fail to allege an adequate criminal predicate act necessary to bring a viable civil RICO claim under either the federal or state statutes. Both of Plaintiffs' stated predicate acts, N.J.S.A. 2C:21-11 and 18 U.S.C. § 1961(1)(2)[2], cannot possibly apply to the facts alleged in the Amended Complaint.

N.J.S.A. 2C:21-11 prohibits "rigging a publicly exhibited contest." That prohibition is limited by its own terms to conduct occurring in New Jersey because that is the limit of the State's legislative authority unless the legislature expresses a clear

---

[1] Plaintiff's reference to *Simon v. Taylor*, 2013 WL 5934420 (D.N.M. Sept. 26, 2013)—an obscure New Mexico case—has no bearing on the RICO analysis. Most obviously, it is not a RICO case; it therefore is not helpful in determining whether Plaintiffs' speculative alleged injury is sufficient to establish RICO standing. *Simon* is confined to a narrow argument surrounding the scope of New Mexico's common law and a state-specific interpretation of New Mexico regulations.

[2] Plaintiffs have seemingly abandoned their other frivolous state predicate acts under the laws of Connecticut, Pennsylvania, and Texas. They likewise do not even bother to defend their baseless invocation of the 23 other state RICO laws they baselessly alleged as separate state-law RICO claims. [*See* DE 22-1 at 23-24, 26-28.]

intent to regulate out-of-state conduct. *Americans for Prosperity v. Grewal*, 2019 WL 4855853, at *7 (D.N.J. Oct. 2, 2019) ("Legislation is presumptively territorial and confined to the limits over which the law-making power has jurisdiction"). Even accepting Plaintiffs' argument that New Jersey has jurisdiction over "offenses partly committed outside of the State," they have failed to identify *any* part of the offense occurring in New Jersey. New Jersey law requires "a direct nexus to New Jersey that would justify its prosecution as a criminal offense here." *Fairfax Fin. Holdings Ltd. v. S.A.C. Capital Mgmt., LLC*, 450 N.J. Super. 1, 40 (2017) (quoting *State v. Sumulikoski*, 110 A.3d 859 (N.J. 2015)).  Plaintiffs have utterly failed to establish that Baffert could even conceivably be criminally charged with N.J.S.A. 2C:21-11 and thus, this statute cannot possibly support a civil RICO claim.

Plaintiffs' second "predicate act," 18 U.S.C. § 1961(1)(2), is not itself a predicate act—rather, it is simply a collection of federal statutes that can be invoked as predicate acts. Plaintiffs' Response does not bother to identify *which* federal predicate act they are invoking, much less defend its applicability. Plaintiffs' previously argued that 18 U.S.C. § 1953(a)(3)—the "Travel Act"—may serve as a qualifying predicate act. But as the Baffert Defendants explained, the "unlawful activity" described in the Act must relate to "the laws of the State in which they are committed." 18 U.S.C. § 1952(b). Plaintiffs have not identified any unlawful activity occurring in New Jersey so they have no basis for invoking the Travel Act.

14

IV.   **Plaintiffs' State Law Fraud Claims Fail as a Matter of Law.**

Finally, Plaintiffs' state-law claims are equally doomed. The Baffert Defendants rely on the arguments set forth in their initial memorandum: Plaintiffs fraud claims are not pleaded with particularity and they have not alleged, nor could they, that the Baffert Defendants intended to defraud them as gamblers and induce their reliance. *See Durr. Mech. Constr., Inc. v. PSEG Fossil, LLC*, 516 F.Supp.3d 407, 421 (D.N.J. Jan. 29, 021). Most importantly, Plaintiffs' claims fail because they do not have a concrete injury, which is an essential element of both of their state law torts. *Konover Const. Corp. v. East Coast Constr. Servs. Corp.*, 420 F.Supp.2d 366, 370 (D.N.J. 2006).

Plaintiffs entire argument rests on Baffert's alleged public statements regarding his intent to retain Dr. Michael Hore to assist him in managing his barn in California. Setting aside Plaintiffs' mischaracterization of those circumstances, New Jersey law is clear that statements about future or contingent events, expectations or probabilities, or as to what will or will not be done in the future, do not constitute misrepresentations even if they turn out to be wrong. *CDK Global, LLC v. Tulley Automotive Grp., Inc.*, 489 F.Supp.3d 282 (D.N.J. 2020).

## CONCLUSION

For the foregoing reasons, the Baffert Defendants respectfully request that this Court dismiss each of the Plaintiffs' claims against them with prejudice.

15

Respectfully submitted,


*/s/ Gavin J. Rooney*
Gavin J. Rooney
LOWENSTEIN SANDLER LLP
One Lowenstein Drive
Roseland, New Jersey 07068
973.597.2500
grooney@lowenstein.com

W. Craig Robertson III
WYATT, TARRANT & COMBS, LLP
250 West Main Street, Suite 1600
Lexington, Kentucky  40507-1746
859.233.2012
wrobertson@wyattfirm.com
(*Admitted Pro Hac Vice*)

*Counsel for Defendants, Robert A. Baffert*
*and Bob Baffert Racing Stables, Inc.*