

WYATT, TARRANT & COMBS, LLP
250 West Main Street, Suite 1600
Lexington, KY 40507
859.233.2012
wyattfirm.com

W. Craig Robertson III
859.288.7667
wrobertson@wyattfirm.com

July 25, 2023

FILED ELECTRONICALLY

Hon. Michael E. Farbiarz, U.S.D.J.
United States District Court
Martin Luther King, Jr. Federal Courthouse
50 Walnut Street
Newark, NJ 07101

      Re:    *Beychok v. Baffert,* 21-cv-14112 MEF-CLW

Dear Judge Farbiarz:

      I write to advise the Court of supplemental authority in support of the Defendants' pending Motion to Dismiss. Please take notice that on July 20, 2023, the United States District Court for the Western District of Kentucky issued its opinion in *Anthony Mattera, et al. v. Robert A. Baffert, et al.*, Case No. 3:22-cv-156-DJH. Identical to this case, the *Mattera* Complaint was commenced by a purported class of aggrieved gamblers against the Baffert Defendants asserting claims connected to pari-mutuel payouts from the 2021 Kentucky Derby. The Western District of Kentucky dismissed those claims as a matter of law. Specifically, the Court held that Kentucky's Rules of Racing govern all bets placed on the Kentucky Derby and because the Rules are clear that all payouts are final based on official race-day results, aggrieved gamblers have no injury at law and no viable cause of action even if race results are later altered. Similarly here, the Baffert Defendants seek dismissal of the case before Your Honor due to a lack of cognizable injury, whether under the RICO statute or otherwise. A copy of the *Mattera* decision is attached hereto as **Exhibit A**.

                                          Respectfully submitted,

                                          W. Craig Robertson III

101199353.1



UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ANTHONY MATTERA et al.,                                            Plaintiffs,

v.                                         Civil Action No. 3:22-cv-156-DJH

ROBERT A. BAFFERT et al.,                                  Defendants.

\* \* \* \* \*

### MEMORANDUM AND ORDER

This action arises from the disqualification of Medina Spirit as the winner of the 2021 Kentucky Derby due to a failed drug test. (Docket No. 1-1, PageID.73 ¶ 71) After Medina Spirit was disqualified, a new order of finish for the race was announced. (*See id.*) But the disqualification and subsequent new order of finish had no impact on the payouts to bettors who had placed wagers on the outcome of the race. (*Id.*, PageID.32 ¶ 121) As a result, nineteen individual plaintiffs initiated this purported class action in state court against Defendants Robert A. Baffert; Bob Baffert Racing, Inc.; and Churchill Downs, Inc. alleging negligence, breach of contract, violation of the Kentucky Consumer Protection Act, and unjust enrichment.[1] (*Id.*, PageID.38–43 ¶¶ 154–91) Plaintiffs seek punitive damages (*id.*, PageID.38–39 ¶¶ 158, 164; *id.*, PageID.42–43 ¶¶ 182, 191), compensatory damages (*id.*, PageID.44–45 ¶¶ 2–3), and a permanent injunction against Churchill Downs. (*Id.*, PageID.43–44 ¶¶ 192–95) The defendants removed the case to this Court under the Class Action Fairness Act (D.N. 1), and now move to dismiss for failure to state a claim. (D.N. 6; D.N. 7) Plaintiffs oppose the motions. (D.N. 34; D.N. 35) After

---

[1] The plaintiffs are Anthony Mattera, Brad Kent, William Adams, Mark Davis, Matt Milligan, Steven J. Brown, Jaol Johnson, Ronald Greener, Bradford Jett, Marion Reid, Shawn Tignor, Whitney Tignor, Kevin Sidle, Charles Hollom, Patrick A. Dicocco, Brian Wells, Roger Thomas, Tim A. Womack, and Steven Laibstain. (*See* D.N. 1-1, PageID.7–9 ¶¶ 1–19)

1



careful consideration, and for the reasons set forth below, the Court will grant Defendants' motions to dismiss.

I.

The Court "takes the facts only from the complaint, accepting them as true as [it] must do in reviewing a 12(b)(6) motion." *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 757 (6th Cir. 2020) (citing Fed. R. Civ. P. 12(b)(6)). Thoroughbred horse racing and pari-mutuel wagers are governed by Kentucky Administrative Regulations.[2] (*See* D.N. 1-1, PageID.17 ¶¶ 38–39, 41; *id.*, PageID.19 ¶ 48; *id.*, PageID.24 ¶ 76; *id.*, PageID.28 ¶¶ 91, 94–96) For each race, there are three stewards with the Kentucky Horse Racing Commission whose "duties and responsibilities include 'caus[ing] the official sign to be posted after determining the official order of finish for purposes of pari-mutuel payoff.'" (*Id.*, PageID.28 ¶ 96 (quoting 810 Ky. Admin. Regs. 2:040 § 5(9))) Once the stewards declare the official order of finish for the race, the results are final for the purpose of paying out any pari-mutuel wagers. (*Id.*, PageID.32 ¶ 121) If a horse is disqualified after a race, "Kentucky laws and regulations . . . do not require racetrack associations to reverse [pari-mutuel] payouts and/or redistribute money" based on the new, official order. (*Id.*)

---

[2] Ky. Rev. Stat. § 230.210(15) defines "pari-mutuel wagering," "pari-mutuel system of wagering," or "mutuel wagering" as

> any method of wagering previously or hereafter approved by the racing commission in which one (1) or more patrons wager on a horse race or races, whether live, simulcast, or previously run. Wagers shall be placed in one (1) or more wagering pools, and wagers on different races or sets of races may be pooled together. Patrons may establish odds or payouts, and winning patrons share in amounts wagered including any carryover amounts, plus any amounts provided by an association less any deductions required, as approved by the racing commission and permitted by law. Pools may be paid out incrementally over time as approved by the racing commission.

Plaintiffs are "horseplayers" who "retrieve, review and analyze data in an attempt to determine the outcome" of horse races. (*Id.*, PageID.30 ¶¶ 107, 110) "Horseplayers place wagers on their predictions about the outcome of [horse] races." (*Id.* at ¶ 111) Defendant Churchill Downs "owns and operates Churchill Downs Racetrack in Louisville, Kentucky" (*id.*, PageID.16 ¶ 31), and "offers pari-mutuel wagering to the public on the races it conducts[,] . . . including the 147th running of the Kentucky Derby." (*Id.*, PageID.25 ¶ 84) Plaintiffs placed eight different types of wagers on that race. (*Id.*, PageID.33–34 ¶ 133)

"On or about April 27, 2021, Churchill Downs began accepting entries for the 147th Running of the Kentucky Derby." (*Id.*, PageID.18 ¶ 43 (citation omitted)) Defendants BBRI and Baffert "trained the Thoroughbred horse Medina Spirit" (*id.*, PageID.20 ¶ 50), and "submitted an entry for Medina Spirit to run." (*Id.*, PageID.18 ¶ 44) Churchill Downs accepted the entry "despite its knowledge of BBRI and Baffert's history of medication violations." (*Id.*, PageID.19–20 ¶ 49; *see id.*, PageID.10–15 ¶ 27 (listing various medication violations)) Medina Spirit proceeded to race and cross the finish line first ahead of "Mandaloun, Hot Rod Charlie, Essential Quality, O Besos and Midnight Bourbon, in that order, among others." (*Id.*, PageID.21 ¶ 59) Churchill Downs "calculated and paid [pari-mutuel] wagers based on Medina Spirit finishing [in] first [place]." (*Id.*, PageID.28 ¶ 98)

After the race, Medina Spirit "submitted a mandatory post-race blood sample test," and the sample "tested positive for betamethasone, which constitutes a violation of Kentucky laws and regulations governing horse racing." (*Id.*, PageID.21 ¶¶ 60–61) BBRI and Baffert requested a split sample test, and the sample "again tested positive for betamethasone, and this time at a higher concentration than found in the first test result." (*Id.*, PageID.22 ¶¶ 65–66; *see id.* at ¶ 63 (explaining split sample); *id.* at ¶ 64 (explaining split sample laboratory)) Shortly after the split

3

test was done, Churchill Downs issued a statement about Medina Spirit's post-race blood sample and stated that if the findings were upheld, then Medina Spirit's "results in the Kentucky Derby would be invalidated and Mandaloun [would] be declared the new winner." (*Id.*, PageID.23 ¶ 70)

On February 21, 2022, Churchill Downs officially disqualified Medina Spirit as the winner of the Kentucky Derby and ruled the new order of finish as Mandaloun, Hot Rod Charlie, Essential Quality, O Besos, and Midnight Bourbon. (*Id.* at ¶ 71) The disqualification of Medina Spirit had no impact on the pari-mutuel wager payouts, however. (*See id.*, PageID.32 ¶ 121 ("Kentucky law and regulations specific to Thoroughbred horse racing and pari-mutuel wagering do not require racetrack associations to reverse payouts and/or redistribute money based on the new, official result."); *see id.* (explaining that even "if a disqualification of an entrant occurs, Kentucky laws and regulations specific to Thoroughbred horse racing and pari-mutuel wagering provide no recourse for horseplayers who hold winning wagers but for the disqualification")) Churchill Downs settled pari-mutuel wagers based on the stewards' official order of finish. (*Id.*, PageID.28 ¶ 98) Plaintiffs contend that Churchill Downs "incorrectly calculated the [pari-mutuel] payouts and incorrectly settled losing [pari-mutuel] wagers." (*Id.*, PageID.29 ¶ 100) They argue that all pari-mutuel wagers should have been settled based on the new order of finish. (*Id.* at ¶¶ 101–02) As a result, Plaintiffs initiated this lawsuit in state court. (*See* D.N. 1-1)

Plaintiffs' complaint alleges negligence, breach of contract, unjust enrichment, and a violation of the Kentucky Consumer Protection Act; in addition, Plaintiffs seek injunctive relief. (*See id.*, PageID.38–44 ¶¶ 154–95) Baffert, BBRI, and Churchill Downs removed the case to this Court under the Class Action Fairness Act (D.N. 1), and now move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.N. 6; D.N. 7) In response, Plaintiffs moved to amend their complaint either as a matter of course or with the Court's leave; in the alternative, they sought

4

an extension of time to respond to the defendants' motions to dismiss. (*See* D.N. 15; D.N. 15-1) Plaintiffs' motion was denied as to the proposed amendments and granted as to their request for an extension of time. (D.N. 29, PageID.397) Plaintiffs have since filed their responses (*see* D.N. 34; D.N. 35), and the defendants' motions to dismiss (D.N. 6; D.N. 7) are now ripe for review. (*See* D.N. 29, PageID.397; D.N. 32; D.N. 33)

## II.

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true. *Id.* If a complaint's "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," then it fails to show that the plaintiffs "[are] entitled to relief," Fed. R. Civ. P. 8(a)(2), and thus will not withstand a motion to dismiss. *Iqbal*, 556 U.S. at 679.

### A.   Negligence

Plaintiffs assert negligence claims against BBRI, Baffert, and Churchill Downs. (*See* D.N. 1-1, PageID.38–39 ¶¶ 154–64) Plaintiffs specifically allege that (1) BBRI and Baffert were "negligent in their care of Medina Spirit and his entry" into the Kentucky Derby (*id.*, PageID.38 ¶ 155); and (2) Churchill Downs was negligent in accepting "the entry of Medina Spirit" and in "failing to maintain an adequate system for detecting and scratching ineligible horses" from

5

competing in its races. (*Id.*, PageID.39 ¶¶ 160–61) Plaintiffs also allege that "[a]s a direct and proximate result" of the defendants' negligence, they "suffered legal injuries and damages in the form of unsettled pari-mutuel wagers." (*Id.*, PageID.38–39 ¶¶ 156, 162)

BBRI and Baffert move for dismissal of the negligence claim on the grounds that Plaintiffs' complaint "makes no attempt to articulate what, if any, duty was owed by [them] to the Plaintiffs, nor does it describe how [BBRI and Baffert are] alleged to have breached any such duty." (D.N. 7, PageID.108 (citing D.N. 1-1, PageID.38 ¶ 155))  Similarly, Churchill Downs moves for dismissal and argues that "[c]ourts around the country—including in the Sixth Circuit applying Kentucky law—routinely dismiss" negligence claims asserted by "disappointed horse racing bettors outside of the governing regulations." (D.N. 6, PageID.79–83 (citation omitted))  In response, Plaintiffs cite numerous cases for the proposition that Kentucky law imposes a universal duty of care, and they assert that such duty applies to the defendants in this case. (D.N. 35, PageID.444–45 (citing *Greer v. Kaminkow*, 401 F. Supp. 3d 762, 770 (E.D. Ky. 2019); *Ames v. Lowe's Home Ctrs., LLC*, No. 3:20-CV-335-CHB, 2021 WL 4097145, at *3 (W.D. Ky. Sept. 8, 2021); *Shelton v. Ky. Easter Seals Soc., Inc.*, 413 S.W.3d 901, 908 (Ky. 2013), *as corrected* (Nov. 25, 2013)); *see* D.N. 34, PageID.419–20)

"[T]o state a cause of action based on negligence under Kentucky law, a plaintiff must plead: (1) a legally-cognizable duty on the part of the defendant; (2) a clear breach of that duty; (3) causation linking the breach to an injury; and (4) damages." *Bartlett v. Pfizer, Inc.*, No. 20-5322, 2020 WL 8994754, at *2 (6th Cir. Dec. 8, 2020) (citing *Patton v. Bickford*, 529 S.W.3d 717, 729 (Ky. 2016)); *see, e.g., Sims v. Atrium Med. Corp.*, 349 F. Supp. 3d 628, 637 (W.D. Ky. 2018) (citing *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992)). The causation element consists of two parts: (1) "'but-for' causation, also referred to as causation in fact," and

(2) "proximate causation." *Patton*, 529 S.W.3d at 730. "But-for causation requires the existence of a direct, distinct, and identifiable nexus between the defendant's breach of duty (negligence) and the plaintiff's damages such that the event would not have occurred 'but for' the defendant's negligent or wrongful conduct." *Id.*

As an initial matter, the Court notes that there is no consensus among courts regarding the scope of the universal duty of care under Kentucky law. *Compare Monday-W. v. Wells Fargo Bank, N.A.*, No. 20-6381, 2022 WL 16848879, at *7 (6th Cir. Nov. 9, 2022) ("With respect to the element of duty in the context of a negligence claim, Kentucky 'has adopted a 'universal duty of care' which requires every person to exercise ordinary care in his activities to prevent foreseeable injury'" (quoting *T & M Jewelry, Inc. v. Hicks ex rel. Hicks*, 189 S.W.3d 526, 530–31 (Ky. 2006))), *with Cordes v. United Specialty Ins. Co.*, No. 5:21-CV-24-BJB, 2022 WL 949935, at *10 (W.D. Ky. Mar. 29, 2022) ("[The] universal duty doesn't displace the usual analysis of whether a defendant owed a plaintiff a duty. Consideration of this 'duty to all,' the Kentucky Supreme Court explained, 'is a beginning point for any duty analysis.'" (quoting *Fryman v. Harrison*, 896 S.W.2d 908, 909 (Ky. 1995))), *McDonald v. DNA Diagnostics Ctr., Inc.*, No. 3:20-CV-391-CRS, 2020 WL 6386869, at *4 (W.D. Ky. Oct. 30, 2020) (explaining that the "universal duty of care[] has no meaning in Kentucky jurisprudence beyond the most general expression of negligence theory, and certainly none absent a relational context as evidenced by the circumstances of each case." (quoting *Jenkins v. Best*, 250 S.W.3d 680, 691 (Ky. Ct. App. 2007))), *and Johnson v. United Parcel Serv., Inc.*, 326 S.W.3d 812, 816 (Ky. Ct. App. 2010) ("Kentucky does not recognize a boundless and general 'universal duty of care.'"). The Court need not decide whether to apply the universal duty of care, however, because Plaintiffs have failed to plead all material elements of a negligence claim.

7

Even assuming that BBRI, Baffert, and Churchill Downs owed Plaintiffs a legally cognizable duty and breached that duty, Plaintiffs fail to adequately allege but-for causation and reasonably certain damages. (*See* D.N. 1-1; D.N. 34; D.N. 35) And such failure is fatal to any negligence claim. *See Patton*, 529 S.W.3d at 729–30. Plaintiffs' complaint is devoid of any facts showing that but for BBRI and Baffert's alleged negligence, their alleged injury would not have occurred. (*See* D.N. 1-1) And there is no allegation regarding but-for causation; Plaintiffs merely assert that "[a]s a direct and proximate result of Defendants' negligence, Plaintiffs and the Plaintiff Class suffered legal injuries and damages in the form of unsettled parimutuel wagers." (*Id.*, PageID.38–39 ¶¶ 156, 162) But "causation cannot be established solely by conjecture, speculation, or surmise." *Brown v. Wal-Mart Stores, Inc.*, 198 F.3d 244 (table), at *4 (6th Cir. 1999) (citing *Toth v. Yoder Co.*, 749 F.2d 1190, 1196 (6th Cir. 1984)). "The mere possibility that the [defendants'] negligence may have been the cause, either theoretical or conjectural, of [the plaintiffs'] injury is not sufficient to establish a causal link between the two." *Id.* (citing *Am. & Foreign Ins. Comp. v. Gen. Elec. Comp.*, 45 F.3d 135, 140 (6th Cir. 1995)). And it is well established that "[t]he mere fact that someone believes something to be true does not create a plausible inference that it is true." *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 931 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 551). "Should the well-pleaded facts support no 'more than the mere possibility of misconduct,' then dismissal is warranted." *Smith v. Westlake Vinyls, Inc.*, 403 F. Supp. 3d 625, 630 (W.D. Ky. 2019) (quoting *Iqbal*, 556 U.S. at 679). Thus, Plaintiffs failed to allege the causation element of a negligence claim. *See Patton*, 529 S.W.3d at 730.

Moreover, Plaintiffs seek damages in the form of "unsettled pari-mutuel wagers" based on an *unofficial order* of finish. (D.N. 1-1, PageID.38–39 ¶¶ 156, 162) But "[t]hese damages are

8

remote, uncertain[,] and speculative and, thus, not recoverable." *Class Racing Stable, LLC v. Breeders' Cup Ltd.*, No. CV 5:16-200-KKC, 2017 WL 562175, at *2 (E.D. Ky. Feb. 10, 2017) (citing *Schork v. Huber*, 648 S.W.2d 861, 863 (Ky. 1983)); *see Gill v. Burress*, 382 S.W.3d 57, 64 (Ky. Ct. App. 2012) ("Kentucky law allows a plaintiff to recover for damages only where the fact of damage is reasonably certain." (citation omitted)). Kentucky's horse racing and pari-mutuel wagering regulations provide: (1) "[t]he decision of the stewards as to the official order of finish for pari-mutuel wagering purposes shall be final, and no subsequent action shall set aside or alter the official order of finish for the purposes of pari-mutuel wagering," 810 Ky. Admin. Regs. 4:040 § 17; and (2) "[a] subsequent change in the order of finish or award of purse money that could result from a subsequent ruling by the stewards, judges, or commission shall not affect the pari-mutuel payout." 810 Ky. Admin. Regs. 6:030 § 10(2). Thus, the only persons entitled to payment on pari-mutuel wagers are those who have tickets that match the stewards' *official order* of finish on the day of the race; the fact that Plaintiffs had "winning wagers" *after the disqualification* of Medina Spirit does not entitle them to damages. *See id.*; 810 Ky. Admin. Regs. 4:040 § 17. Accordingly, Plaintiffs' negligence claims cannot withstand a motion to dismiss. *Patton*, 529 S.W.3d at 729–30.[3]

---

[3] In Plaintiffs' responses (D.N. 34; D.N. 35), they ask the Court to "reconsider its findings, conclusions and rulings in the March 24 Memorandum and Order" regarding their negligence claim because the Court found, in part, that Kentucky does not recognize a boundless and general universal duty of care. (*See* D.N. 34, PageID.421–22 (citing D.N. 29, PageID.390); D.N. 35, PageID.446–47 (citing D.N. 29, PageID.390)) Such reconsideration, however, is unnecessary. The Court's negligence finding in the March 24, 2023 Memorandum and Order (D.N. 35), like the one here, hinges on the fact that Plaintiffs fail to adequately plead all material elements of a negligence claim. (*See supra* § II.A.; D.N. 29, PageID.390–91)

B.     **Breach of Contract**

Plaintiffs next claim that Churchill Downs breached the parties' contract. (D.N. 1-1, PageID.40) Specifically, Plaintiffs allege that (1) they had a contract with Churchill Downs "in the form of pari-mutuel wagers placed and accepted"; (2) Churchill Downs breached that contract "by failing to settle Plaintiffs' . . . winning pari-mutuel wagers"; and (3) damages resulted in the form of unsettled pari-mutuel wagers. (*Id.* at ¶¶ 167–69) Churchill Downs moves to dismiss Plaintiffs' breach-of-contract claim on the grounds that there was "no wagering contract" between the parties "that would entitle them to payment based on an order of finish that changed after the race was declared official." (D.N. 6, PageID.91) Churchill Downs contends that pari-mutuel betting "differs from other types of betting in that the betting transaction is not between the bettor and the racetrack, but between the bettor and all other bettors. The racing association is merely a stakeholder as regards pari-mutuel funds: collecting bets, deducting the tax, and distributing the pari-mutuel pools." (*Id.* (quoting *Discenza v. N.Y.C. Racing Ass'n, Inc.*, 509 N.Y.S.2d 454, 455 (Civ. Ct. 1986))) Churchill Downs further argues that even if a contract existed between the parties, "the terms of that agreement would include the regulations that specifically address Plaintiffs' plight and deny them payment," and because the Kentucky Horse Racing Commission regulations "specifically reject Plaintiffs' claim for payment based on a later re-ordering of the horses, the contract claim fails." (*Id.*, PageID.91–92) In response, Plaintiffs contend that (1) "[s]imilar to the purchase of a lottery ticket in Kentucky, the placement of a wager constitutes a contract with the rules and regulations of horse racing providing the terms" (D.N. 35, PageID.458 (citing D.N. 7, PageID.113 n.8)), and (2) they have alleged sufficient facts that indicate Churchill Downs "breached the terms of the contract." (*Id.*)

10

"To plead breach of contract under Kentucky law, a plaintiff[] must plead the following elements: (1) a contract existed; (2) that the contract was breached; and (3) damages resulted from the breach." *Robards v. BLK Out Transp.*, 623 F. Supp. 3d 810, 821 (W.D. Ky. 2022) (citing *Barnett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W. 3d 723, 727 (Ky. App. 2007)). Plaintiffs fail to make such a showing.

As outlined above, Plaintiffs concede that any wagering contract between them and Churchill Downs would be subject to Kentucky's horse-racing and pari-mutuel wagering regulations (D.N. 35, PageID.458 (citing D.N. 7, PageID.113 n.8)). *See* 810 Ky. Admin. Regs. 6:030 (explaining that Ky. Rev. Stat. § 230.215(2) "authorizes the Kentucky Horse Racing Commission to regulate conditions under which horse racing and pari-mutuel wagering thereon shall be conducted in Kentucky" and that Ky. Rev. Stat. § 230.361(1) "requires the commission to promulgate administrative regulations governing and regulating wagering on horse races under the pari-mutuel system of wagering"). Two regulations are pertinent to this case: (1) "[t]he decision of the stewards as to the official order of finish for pari-mutuel wagering purposes shall be final, and no subsequent action shall set aside or alter the official order of finish for the purposes of pari-mutuel wagering," 810 Ky. Admin. Regs. 4:040 § 17; and (2) "[a] subsequent change in the order of finish or award of purse money that could result from a subsequent ruling by the stewards, judges, or commission shall not affect the pari-mutuel payout." 810 Ky. Admin. Regs. 6:030 § 10(2).

The complaint also concedes that the stewards' official order of finish listed Medina Spirit as the winner of the Kentucky Derby, and Churchill Downs distributed the pari-mutuel payouts accordingly. (D.N. 1-1, PageID.28–29 ¶¶ 97–99) Under applicable state law, the fact that Medina Spirit was disqualified as the winner of the Kentucky Derby—nine months after the race—had no

11

impact on the pari-mutuel payouts. *See* 810 Ky. Admin. Regs. 4:040 § 17; 810 Ky. Admin. Regs. 6:030 § 10(2). Thus, Plaintiffs cannot show breach of contract or resulting damages. At bottom, because Plaintiffs have both failed to adequately plead two essential elements of a breach-of-contract claim and alleged facts that plead the claim out of court, the claim will be dismissed. *See NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 458 (6th Cir. 2007) ("Nothing prevents [the] plaintiff[s] from pleading [themselves] out of court, which is all that happened here."); *Robards*, 623 F. Supp. 3d at 821 (citing *Barnett*, 233 S.W. 3d at 727).

C.  **Kentucky Consumer Protection Act (KCPA)**

Under the KCPA,

> [a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss . . . may bring an action . . . to recover actual damages.

Ky. Rev. Stat. § 367.220(1). "To assert a KCPA claim, Plaintiffs must allege that [Churchill Downs] engaged in '[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce,'" *Naiser v. Unilever U.S., Inc.*, 975 F. Supp. 2d 727, 741 (W.D. Ky. 2013) (quoting Ky. Rev. Stat. § 367.170(1)), and "that such practices caused Plaintiffs harm." *Id.* (citing *Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 730 F. Supp. 2d 683, 698 (W.D. Ky. 2010)). For purposes of Ky. Rev. Stat. § 367.170, "unfair shall be construed to mean unconscionable." Ky. Rev. Stat. § 367.170(2). And "[t]he terms 'false, misleading[,] and deceptive' [have] sufficient meaning to be understood by a reasonably prudent person of common intelligence," *Stevens v. Motorists Mut. Ins.*, 759 S.W.2d 819, 820 (Ky. 1988) (citing *Dare To Be Great, Inc. v. Com. ex rel. Hancock*, 511 S.W.2d 224, 227 (Ky. 1974)), and therefore "are given their ordinary meaning as understood by a reasonably prudent person of common intelligence." *Noble v. Time Ins.*, No. 11-345-GFVT, 2013 WL 1964819, at *4 (E.D. Ky. May 10, 2013) (quoting

12

*Maynard v. Am. Med. & Life Ins. Co.*, 4:10–cv–00157–JHM, 2012 WL 2571160, at *3 (W.D.Ky. July 2, 2012)).

Churchill Downs argues that Plaintiffs' complaint "does not plausibly allege even one of the three required elements" of a KCPA claim. (D.N. 6, PageID.92) Churchill Downs further argues that the KCPA does not apply to "wagering transactions" and that Plaintiffs "cannot allege that Churchill Downs engaged in any unfair, false, misleading, or deceptive acts or practices." (*Id.*, PageID.93–94)

Plaintiffs' KCPA claim is based on the following allegations: (1) Churchill Downs "conducts trade and/or commerce as defined in [Ky. Rev. Stat.] 367.110 by advertising, offering and distributing wagers on Thoroughbred horse racing" (D.N. 1-1, PageID.40 ¶ 172); (2) Churchill Downs "makes the choice, and has the final say, to accept or refuse entries to any of its proposed races from those submitting entries and their horses to compete in the races, including the 147th running of the Kentucky Derby" (*id.*, PageID.18 ¶ 42 (citing 810 Ky. Admin. Regs. 4:030 § 2)); (3) Churchill Downs knew of "BBRI and Baffert's history of medication violations prior to the submission of the entry of Medina Spirit into the 147th running of the Kentucky Derby" (*id.*, PageID.18–19 ¶ 45); (4) Churchill Downs knew that "less than two months prior to the 147th running of the Kentucky Derby, the Kentucky Horse Racing Commission disqualified BBRI and Baffert's trainee Gamine from the 2020 running of the Kentucky Oaks at Churchill Downs Racetrack due to a positive test for betamethasone" (*id.*, PageID.19 ¶ 46); and (5) "under its own rules and pursuant to Kentucky law and regulations," Churchill Downs "could have refused the entry of Medina Spirit into the 147th running of the Kentucky Derby." (*Id.* at ¶ 47) Based on these assertions, Plaintiffs conclude that Churchill Downs violated the KCPA by "continu[ing] to accept entries of Thoroughbred horses from trainers and/or owners it knows, or should know, enter

13

unqualified and ineligible horses in races." (*Id.*, PageID.32 ¶ 124; *see id.*, PageID.40–42 ¶¶ 170–82)

As an initial matter, Plaintiffs do not direct the Court to any case law to support their allegation that Churchill Downs should not have accepted the entry of Medina Spirit for the Kentucky Derby because of its knowledge of past medical violations by BBRI and Baffert (D.N. 1-1, PageID.18–19 ¶¶ 42–47), and Kentucky's horse-racing regulations do not impose such a requirement. *See* 810 Ky. Admin. Regs. 4:030. Moreover, Plaintiffs do not allege that Churchill Downs or its representatives failed to disclose material facts or misrepresented information regarding the horses running in the Kentucky Derby. (*Compare* D.N. 1-1, PageID.40–42 ¶¶ 170–82 (failing to allege that Churchill Down did not disclose material facts or misrepresented information), *with Kempf v. Lumber Liquidators, Inc.*, No. 3:16-CV-492-DJH, 2017 WL 4288903, at *5 (W.D. Ky. Sept. 27, 2017) (citations omitted) (finding that the plaintiff adequately pleaded a claim under the KCPA when she asserted the following: (1) the defendant failed to "disclose material facts regarding the defective nature" of a product; (2) the defendant "misrepresented" the "appearance and durability" of that product; and (3) the plaintiff relied on the representations of the defendant's salesperson when purchasing the product)) In fact, Plaintiffs acknowledge that the information regarding "BBRI and Baffert's history of medical violations" is publicly available. (D.N. 1-1, PageID.10–15 ¶¶ 26–27 (citing public records of Baffert's medical violations between August 1977 and September 2020)) Plaintiffs also do not allege that they placed pari-mutuel wagers based on any representations made by Churchill Downs or their representatives. (*Compare id.*, PageID.40–42 ¶¶ 170–82 (failing to allege that they relied on any representations made by Churchill Downs), *with Naiser*, 975 F. Supp. 2d at 741–44 (finding that the plaintiffs' KCPA pleadings sufficient because they identified specific representations by the defendant that were

14

false, misleading, or otherwise deceptive)) And there is nothing in the complaint to suggest that Churchill Downs knew of any medical violations related to Medina Spirit on the day of or in the days leading up to the 147th running of the Kentucky Derby. (*See* D.N. 1-1) Rather, as set forth in the complaint, Medina Spirit's positive drug test came only after the completion of the race. (*See id.*, PageID.19 ¶ 48; *id.*, PageID.21 ¶¶ 60–61)

Plaintiffs' KCPA claim also fails to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Under that rule, when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Naiser*, 975 F. Supp. 2d at 733 (quoting Fed. R. Civ. P. 9(b)) (applying the Rule 9(b) heightened pleading standard to the plaintiffs' KCPA claim); *see, e.g.*, *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001) ("[I]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." (citation omitted)). To satisfy this heightened standard, Plaintiffs "must generally (1) specify the time, place, and content of the alleged misrepresentation; (2) identify the fraudulent scheme and the fraudulent intent of the defendant; and (3) describe the injury resulting from the fraud." *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 358 (6th Cir. 2014) (citing *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008)). "Generalized and conclusory allegations that the [defendant's] conduct was fraudulent do not satisfy Rule 9(b)." *Bovee*, 272 F.3d at 361 (citing *Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir. 1982)).

Here, Plaintiffs' complaint does not specify the time, the place, or the content of the alleged misrepresentation. (*See* D.N. 1-1) Plaintiffs' complaint also fails to identify the fraudulent scheme and fraudulent intent of Churchill Downs (*see id.*), and thus cannot identify any injury resulting from such fraud. *See SFS Check, LLC*, 774 F.3d at 358 (citing *SNAPP, Inc.*, 532 F.3d at 504).

15

Plaintiffs therefore fail to meet the heightened pleading standard of Rule 9(b), and their KCPA claim cannot withstand a motion to dismiss. *See id.*; *Naiser*, 975 F. Supp. 2d at 741 (quoting Ky. Rev. Stat. § 367.170(1)).

**D.     Unjust Enrichment**

Plaintiffs lastly allege a claim of unjust enrichment. (D.N. 1-1, PageID.42–43) To state such a claim under Kentucky law, Plaintiffs "must plead: '(1) [a] benefit conferred upon defendant at [Plaintiffs'] expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value.'" *Commonwealth of Ky. v. Marathon Petroleum Co.*, 191 F. Supp. 3d 694, 706 (W.D. Ky. 2016) (quoting *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. Ct. App. 2009)); *see, e.g., Naiser*, 975 F. Supp. 2d at 749 (quoting *Pixler v. Huff*, No. 3:11-CV-00207-JHM, 2011 WL 5597327, at *11 (W.D. Ky. Nov. 17, 2011)); *Griffin v. Jones*, 975 F. Supp. 2d 711, 727 (W.D. Ky. 2013) (quoting *Jones*, 297 S.W.3d at 78).

Plaintiffs specifically allege that they conferred a benefit on Churchill Downs "by making wagers on the 147th running of the Kentucky Derby"; that Churchill Downs "appreciated the benefit by receiving the wagers and retaining the revenues derived from them"; and that "[r]etention of the money wagered and revenues derived constitutes an inequitable retention of the benefit without payment for its value." (D.N. 1-1, PageID.42 ¶¶ 184–86) These allegations are based on Plaintiffs' belief that after Medina Spirit's disqualification, the pari-mutuel payouts should have been calculated and paid based on the new order of finish (*see id.*, PageID.29 ¶ 101), and that because they were not, Churchill Downs inequitably retained a benefit. (*Id.*, PageID.42 ¶¶ 185–86) Churchill Downs argues that Plaintiffs "do not and cannot allege" that it inequitably retained any part of Plaintiffs' wagers. (D.N. 6, PageID.94–95) The Court agrees.

16

The Kentucky Administrative Regulations detail how payments are made to pari-mutuel bettors. *See* 810 Ky. Admin. Regs. 6:030 § 10. Section 10, titled "Payment on Pari-Mutuel Tickets on Live Horse Races," provides, in part, that

> (2) [p]ayment of valid pari-mutuel tickets shall be made on the basis of the order of finish as declared "official" by the stewards or judges. A subsequent change in the order of finish or award of purse money that could result from a subsequent ruling by the stewards, judges, or commission shall not affect the pari-mutuel payout.
>
> (3) Each association shall deduct from each pari-mutuel pool a commission, not exceeding the commission established by K[y.] R[ev.] S[tat. §] 230.3615 or K[y.] R[ev.] S[tat. §] 230.750. The remainder of the pari-mutuel pool after the deduction of the commission shall be the net pool for distribution as payouts to ticket holders.

810 Ky. Admin. Regs. 6:030 § 10(2)–(3). Based on the plain text of the regulations, Medina Spirit's disqualification nine months after the race (D.N. 1-1, PageID.23 ¶ 71), had no impact on the pari-mutuel payouts. *See* 810 Ky. Admin. Regs. 6:030 § 10(2). The complaint concedes that Churchill Downs complied with 810 Ky. Admin. Regs. 6:030 § 10(2) by making pari-mutuel payments based on the stewards' official order of finish. (D.N. 1-1, PageID.28–29 ¶¶ 93, 97–99) Moreover, 810 Ky. Admin. Regs. 6:030 § 10(3) provides that Churchill Downs' commission percentage is limited by Ky. Rev. Stat. § 230.3615 or Ky. Rev. Stat. § 230.750, and these statutes do not allow for a variance in commission percentage based on which horse wins the race. *See* Ky. Rev. Stat. § 230.3615; Ky. Rev. Stat. § 230.750. Thus, regardless of who finished first in the stewards' official order of finish for the Kentucky Derby, Churchill Downs would have retained the same commission percentage. *See* Ky. Rev. Stat. § 230.3615; Ky. Rev. Stat. § 230.750. And Plaintiffs' complaint is devoid of any allegation that Churchill Downs deducted a commission that exceeded the statutory limits. (*See* D.N. 1-1, PageID.42–43 ¶¶ 183–91) Because Plaintiffs have both failed to adequately plead an essential element of an unjust enrichment claim and alleged facts that plead the claim out of court, the claim will be dismissed. *See NicSand, Inc.*, 507 F.3d at

458 ("Nothing prevents [the] plaintiff[s] from pleading [themselves] out of court, which is all that happened here."); *Marathon Petroleum Co.*, 191 F. Supp. 3d at 706 (quoting *Jones*, 297 S.W.3d at 78).

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     Defendants' motions to dismiss (D.N. 6; D.N. 7) are **GRANTED**.

(2)     Plaintiffs' requests for a hearing (*see* D.N. 34, PageID.416; D.N. 35, PageID.438) are **DENIED** as moot.

(3)     This matter is **DISMISSED** with prejudice and **STRICKEN** from the Court's docket.

July 20, 2023

David J. Hale, Judge
United States District Court

18