**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

Michael E. Beychok, Justin Wunderler, Keith Mauer, Jeffrey Kaufman, Todd Scoville, Brian Daury, Matthew Wiley, James Davis Jr., Randall Jason King, Theresa Martin, Andy McVay, Roger Thomas, Jeffrey Andrews, Jason Eck, Carlo Capogreco, Steven Laibstain, Randall Robert Thompson, Jeffrey Seals, Dean Hokanson III, Scot Fennell, Eric Wisher, William Wendoloski, Mattew Schwartz, Andrew Greenberg, Kevin Reed, Robert Fields, Tom Van Houtte, Daniel Smith, Gary Davis, and Charles Cochran, individually and on behalf of all others similarly situated,

*Plaintiffs,*

v.

Robert A. Baffert; and Bob Baffert Racing Stables, Inc.,

*Defendants.*

Civil Action No. 21-14112(MEF)(CLW)

**OPINION and ORDER**

**Table of Contents**

**I. Background**

**A. The Allegations**

**B. Procedural History**

**C. The California Lawsuits**

**1. Procedural History**

2. Comparison To The New Jersey Action

D. The Kentucky Lawsuit

1. Procedural History

2. Comparison To The New Jersey Action

II. Legal Background

A. Whether To Transfer A Case: The Law In General

B. Whether To Transfer This Case: The Court's Approach

III. Transfer When There Is Venue: The Section 1404(a) Analysis

A. "Might Have Been Brought"

1. Personal Jurisdiction

a. Kentucky

b. California

2. Venue

a. Kentucky

b. California

B. The Transfer Factors

1. Plaintiffs' Forum Choice

2. Defendants' Forum Preference

3. Where Claims Arose

4. Parties' Convenience

5. Judgment Enforceability

6. Practical Considerations

7. Court Congestion

8. Local Interest

9. Public Policies

10. Familiarity With State Law

C. Conclusion

IV. Transfer Where There Is Not Venue: The Section 1406(a) Analysis

V. There Is No Need To Decide Whether There Is Venue

* * *

Bettors lost their wagers on a horse race in which the winning horse had been "doped."

The bettors sued the horse's trainer and his company.

The Court indicated it was considering transferring the lawsuit to another district and solicited briefing from the parties.

The Court now transfers this case to the Western District of Kentucky.

## I. Background

### A. The Allegations

The Defendants,[1] it is alleged, conspired to give banned performance-enhancing drugs to horses. See Amended Complaint ¶¶ 3, 84. The Defendants then allegedly entered the horses into races, including the 2021 Kentucky Derby, which one of those "doped"[2] horses won. See id. at ¶¶ 3-6.

The Plaintiffs[3] are bettors who wagered on the 2021 Derby and lost to the Defendants' horse. See Amended Complaint ¶¶ 7-36, 156. The Plaintiffs allege they were injured, because their bets would have paid off but for the Defendants' horse winning. See id.

### B. Procedural History

The Plaintiffs' lawsuit was filed in 2021, and eventually re-assigned to the undersigned.

---

[1] The Defendants: Robert A. Baffert, a horse trainer, see Amended Complaint ¶¶ 68, 125, and Bob Baffert Racing Stables, Inc., his corporation. See id. ¶ 68; see also Motion to Dismiss at 7.

[2] "Doping" is the term used by the Plaintiffs, see, e.g., Amended Complaint ¶ 3, for giving a horse a prohibited performance-enhancing substance. See id. at ¶¶ 4, 84. A horse that has been given such substances is said to have been "doped." Because the Plaintiffs use these terms, the Court uses them here and throughout.

[3] The 30 named plaintiffs are referred to throughout as "the Plaintiffs." Note that this case is brought as a putative class action.

In December of 2023, the Court issued an order sua sponte. See Order (December 22, 2023).

The Court noted that this case seemed to have "little if anything to do with New Jersey." Id. at 2. And the Court indicated it was considering transferring the case to a different district and directed the parties to brief the issue. See id. at 2-3.[4] The parties have done so.

The question of whether to transfer this case is now before the Court.

Before analyzing this question, it is necessary to briefly introduce certain lawsuits that are related to this one.

### C. The California Lawsuits

#### 1. Procedural History

In 2021, two lawsuits were filed in the Central District of California. See Beychok v. Baffert, Case No. 2:21-cv-04045 (C.D. Cal. 2021); Kaufman v. Baffert, Case No. 2:21-cv-04308 (C.D. Cal. 2021).

Later in 2021, the plaintiffs dismissed the lawsuits, before the Court made any significant rulings. See Beychok, Notice of Voluntary Dismissal (Docket Entry 26).

#### 2. Comparison To The New Jersey Action

The case before this Court ("the New Jersey Action") is closely similar to the two California lawsuits. Consider four ways.

---

[4] A District Court may, sua sponte, transfer a case to another district. See Danziger & De Llano, LLP v. Morgan Verkamp LLC, 948 F.3d 124, 132 (3d Cir. 2020); see also Amica Mutual Ins. Co. v. Fogel, 656 F.3d 167, 180 (3d Cir. 2011). But the parties should get a full opportunity to be heard before the Court reaches any decision. See Zangara v. Nat'l Bd. of Med. Examiners, 2023 WL 6533467, at *3 (D.N.J. Oct. 6, 2023); Deibler v. Basic Rsch., LLC, 2023 WL 6058866, at *4 (D.N.J. Sept. 18, 2023); Meyers v. Heffernan, 2012 WL 1133732, at *5 (D. Del. Mar. 29, 2012); cf. Massenburg v. Davis, 2023 WL 8614199, at *8 (D.N.J. Nov. 29, 2023) (another context in which a possible sua sponte action by the court is preceded by the parties having a chance to be heard).

First, take plaintiffs. One California lawsuit, Beychok, had four named plaintiffs; three are named as plaintiffs here, in the New Jersey Action. The other California lawsuit, Kaufman, had one named plaintiff; he is a named plaintiff in the New Jersey Action.

Second, focus on defendants. Each California lawsuit ran against three defendants. Of the three, two are the Defendants in the New Jersey Action.

Third, consider causes of action. Each California lawsuit alleged two federal racketeering act ("RICO") counts and two fraud counts. See Complaint, Beychok, Case No. 2:21-cv-04045 at ¶¶ 87-117; Kaufman, Case No. 2:21-cv-04308 ¶¶ 78-108. The New Jersey Action includes the same four counts, see Amended Complaint ¶¶ 167-187, 206-220, plus two others based on state racketeering laws. See Amended Complaint ¶¶ 188-205.

Fourth, look to the underlying allegations themselves. The cases are each about the same purported conspiracy --- "doping" of a horse by the Defendants in the 2021 Kentucky Derby, which allegedly impacted the outcome of the race and caused some people to lose bets they would otherwise have won. Compare Amended Complaint ¶¶ 167-187, 206-220 with Complaint, Beychok, Case No. 2:21-cv-04045 ¶¶ 87-117 and Complaint, Kaufman, 2:21-cv-04308 (C.D. Cal. 2021) ¶¶ 78-108.

### D. The Kentucky Lawsuit

#### 1. Procedural History

Another case was filed in March of 2022 and went forward in the Western District of Kentucky. See Mattera v. Baffert, Case No. 3:22-cv-156-DJH (W.D. Ky. 2022).

It ended in 2023, when the Court granted a motion to dismiss for failure to state a claim. See id., Memorandum and Order (Docket Entry 39).

#### 2. Comparison To The New Jersey Action

The Kentucky lawsuit and the New Jersey Action do not share plaintiffs or causes of action. But they are otherwise similar.

The Kentucky lawsuit was pressed against three defendants, and two are the Defendants here in the New Jersey Action.

And the Kentucky lawsuit was focused on the same essential

alleged acts as the New Jersey Action. That is: the "doping" of a horse at the 2021 Kentucky Derby.[5] Compare Amended Complaint ¶¶ 5-6, 156 with Complaint, Mattera, Case No. 3:22-cv-156-DJH ¶¶ 50-68.

## II. Legal Background

Should this case be moved to another district?

The Court's ultimate answer: yes.

To begin getting there, start with a brief introduction of relevant legal principles, see Part II.A, and a preview of the analysis to come. See Part II.B.

### A. Whether To Transfer A Case: The Law In General

The United States is split into federal judicial districts. See 28 U.S.C. §§ 81-130.

Venue statutes determine the district or districts where a particular lawsuit may be filed. See, e.g., TC Heartland LLC v. Kraft Foods Grp. Brands. LLC, 581 U.S. 258, 263-64 (2017).

A federal court can transfer a civil case from one district to another. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 878 (3d Cir. 1995).

When is that potentially appropriate?

Two statutes provide the answer.

One is 28 U.S.C. § 1404(a) ("Section 1404(a)"). It reads:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The second statute is 28 U.S.C. § 1406(a) ("Section 1406(a)"). It reads:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could

[5] The Kentucky Derby is run in the Western District of Kentucky.

have been brought.

What this adds up to: (a) if venue is proper in the court where a case is brought, the court decides whether to transfer the case in light of the standards laid out in Section 1404(a); and (b) if venue is not proper in the court where a case is brought, the court decides whether to transfer the case in light of Section 1406(a). See Lafferty v. St. Riel, 495 F.3d 72, 76-77 (3d Cir. 2007), as amended (July 19, 2007), as amended (Nov. 23, 2007); 15 Fed. Prac. & Proc. Juris. (Wright & Miller) § 3842 (4th ed. 2023); 17 Moore's Federal Practice - Civil § 111.02 (2023).[6]

## B. Whether To Transfer This Case: The Court's Approach

Should this case be transferred?

The Court's analysis is in three parts.

First, the Court assumes New Jersey is a proper venue for this case, and therefore undertakes a Section 1404(a) analysis. That analysis, the Court concludes, establishes that the case should be transferred to the Western District of Kentucky. See Part III.

Second, the Court assumes New Jersey is not a proper venue, and therefore does a Section 1406(a) analysis. That analysis also establishes this case should be moved to Kentucky. See Part IV.

Third and finally, a question: before transferring the case, must the Court determine whether New Jersey (a) is a proper venue (such that transfer is under Section 1404(a)) or (b) is not a proper venue (such that transfer is under Section

[6] Does it matter whether a possible transfer is considered under Section 1404(a) or Section 1406(a)? Some courts have treated the analysis as different under each Section. See, e.g., Adams, Nash & Haskell, Inc. v. United States, 2020 WL 1305620, at *4 (D.N.J. Mar. 19, 2020); Dance v. Pennsylvania, 2018 WL 3350392, at *3 (E.D. Pa. July 9, 2018); Prominent GmbH v. Prominent Sys., Inc., 2017 WL 1316362, at *20 (W.D. Pa. Apr. 10, 2017); Gottlieb v. United States, 2006 WL 2591069, at *3 (D.N.J. Sept. 8, 2006). Other courts have treated the analysis as similar or the same. See Paltalk Holdings, Inc. v. Valve Corp., 2017 WL 4570301, at *2 n.2 (D. Del. Oct. 13, 2017), report and recommendation adopted, 2018 WL 692928 (D. Del. Feb. 2, 2018); Am. High-Income Trust v. AlliedSignal Inc., 2002 WL 373473, at *4 (D. Del. Mar. 7, 2002). For a discussion, see Part IV.

1406(a))?

The Court's answer: there is no obligation in this case to make that determination before transferring the case to Kentucky. See Part V.

## III. Transfer When There Is Venue: The Section 1404(a) Analysis

As noted above, see Part II.A, when venue is proper in this Court, transfer is analyzed under Section 1404(a).

In this Part, the Court assumes New Jersey is a proper venue, conducts a Section 1404(a) analysis, and concludes the case should be transferred to the Western District of Kentucky.

In assessing a potential transfer where venue is proper, the analysis is in two steps. See generally Interlink Prods. Int'l, Inc. v. Crowfoot, 2020 WL 6707946, at *6 (D.N.J. Nov. 16, 2020) (citing Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir. 1970)).

First, the Court determines whether the potential transferee forum[7] is one where the action "might have been brought." See Jumara, 55 F.3d at 879 (quoting 28 U.S.C. § 1404(a)).

Second, the Court determines "whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum[.]" Jumara, 55 F.3d at 879.

The first step in the analysis is below at Part III.A. The second step is at Part III.B.

### A. "Might Have Been Brought"

As noted, the first step is asking where the case "might have been brought." Jumara, 55 F.3d at 879.

---

[7] The "transferee forum" is the district to which the case might be transferred. Here, there are two such districts. One is the Western District of Kentucky, because that is where the horse race in question was run, see Part I.A, and where a related case was brought. See generally Part I.D. The other is the Central District of California, because that is where the Defendants are based, see Part III.A.2.b, and where two other related cases were brought. See generally Part I.C.

This is a matter of asking whether personal jurisdiction and venue would be proper in the Western District of Kentucky and in the Central District of California. See footnote 7; see generally Hoffman v. Blaski, 363 U.S. 335, 344 (1960); Crowe v. Johnson & Johnson, 2021 WL 1611245, at *2 (D.N.J. Apr. 26, 2021).

The Court analyzes personal jurisdiction, see Part III.A.1, and then venue, see Part III.A.2, as to each District.

**1. Personal Jurisdiction**

**a. Kentucky**

"A federal court can exercise personal jurisdiction to the same extent as the state courts of the state where the federal court sits." Rose v. Ferrari N. Am., Inc., 2023 WL 4914313, at *1 (D.N.J. July 31, 2023); see Fed. R. Civ. P. 4(k)(1)(A); Daimler AG v. Bauman, 571 U.S. 117, 125 (2014).

Personal jurisdiction in Kentucky runs out to the limits set by the Due Process Clause of the United States Constitution. See, e.g., Luftman v. Lab'y for Kidney Pathology, Inc., 2016 WL 5796875, at *2 (E.D. Ky. Sept. 30, 2016).

"Under the United States Constitution, there are two potentially relevant ways to establish personal jurisdiction: general and specific." Caduceus, Inc. v. Univ. Physician Grp., 2024 WL 303845, at *1 (D.N.J. Jan. 26, 2024); see generally Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011).

As to the Western District of Kentucky, it is specific jurisdiction that would be in play.

To establish specific jurisdiction under the Constitution, a three-prong test must be met: (1) the defendants must have purposefully availed themselves of the relevant forum, (2) the litigation must strongly relate to the defendants' purposeful forum contacts, and (3) the exercise of jurisdiction may not offend traditional notions of fair play and substantial justice. See generally Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 592 U.S. 351, 358-363 (2021).

Here, the core allegation is that the Defendants helped to enter a "doped" horse in a Western District of Kentucky horse race. See Amended Complaint ¶ 5. The lawsuit arises directly out of that contact with the Western District. See id. at ¶¶ 6-36,

156. This easily satisfies the first two prongs of the three-prong test. See, e.g., Fort Motor, 141 S. Ct. at 1022-24, 1032; Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty., 582 U.S. 255, 264 (2017); Goodyear, 564 U.S. at 919.[8] And there is no suggestion that the third prong is a barrier to personal jurisdiction in Kentucky.

**b. California**

As in Kentucky, personal jurisdiction in California pushes to the outer bounds set by the Due Process clause of the United States Constitution. See, e.g., Amiri v. DynCorp Int'l, Inc., 2015 WL 166910, at *2 (N.D. Cal. Jan. 13, 2015).

Consistent with those Due Process limits, general personal jurisdiction may be established in an individual defendant's domicile, or in an "equivalent place" for a defendant that is a corporation. Goodyear,564 U.S. at 924.

Here, the Defendants state that they "are all domiciled in California." Defendants' Memorandum in Support of their Motion to Dismiss the Amended Complaint ("Motion to Dismiss") at 1; see also id. at 7.

Accordingly, they would be subject to general personal jurisdiction in the Central District of California.

**2. Venue**

As set out above, there would be personal jurisdiction in this case in either the Western District of Kentucky or the Central District of California. That is half of determining whether the case "might have been brought," Jumara, 55 F.3d at 879, in those districts. The other half: would there be venue?

Venue is typically determined based on the so-called "general venue statute."

That statute is an across-the-board default. See generally Kochetkova v. Garnet Health Med. Ctr., 2023 WL 6474630, at *1

---

[8] That the Plaintiffs are pressing a putative class action does not change the analysis. See, e.g., Personal Jurisdiction Over Defendants in Plaintiff Class Actions — General Principles of Personal Jurisdiction, 2 Newberg and Rubenstein on Class Actions § 6:30 (6th ed.).

(D.N.J. Oct. 5, 2023). It "govern[s] the venue of all civil actions brought in the district courts", "[e]xcept as otherwise provided by law[.]". 28 U.S.C. § 1391(a)(1).

Sometimes, the law "provide[s]" for another approach, as when certain statutes have their own venue provisions. These are called "special venue provisions." See generally Kochetkova, 2023 WL 6474630, at *2; 14D Fed. Prac. & Proc. Juris. (Wright & Miller) § 3801 (4th ed.).

Here, the Plaintiffs press six claims. See Amended Complaint ¶¶ 167-220.

As to four, see id. ¶¶ 188-220, there is no special venue provision. For those four, venue is assessed under the general venue statute.

The remaining two claims are federal RICO claims. See id. at ¶¶ 167-187.

RICO has its own special venue provision. See 18 U.S.C. § 1965; see also Laurel Gardens, LLC v. Mckenna, 948 F.3d 105, 119 (3d Cir. 2020).

Accordingly, to determine whether there is venue here, the Court asks whether there is venue under both the general venue statue (which covers four of the counts) and the RICO special venue provision (which covers the two RICO counts).[9]

---

[9] A wrinkle. Some special venue provisions are exclusive, others are additive. See generally Kochetkova, 2023 WL 6474630, at *2. When a special venue provision is exclusive, it pushes aside the general venue statute, and the special venue provision is the only way to establish venue. See id. at *2. When a special venue provision is additive, it provides an extra way to get venue; venue can be established under either the special venue provision or the general venue state. See id. Neither the Supreme Court nor the Third Circuit has indicated whether the RICO special venue provision is additive or exclusive. This question would have to be reckoned with here if the Court were to conclude that there is venue in California and Kentucky under the general venue statute, but not under the RICO special venue provision. But the Court concludes, see Part III.A.2, that there is venue in both places, and under both the general venue statue and the special venue provision.

**a. Kentucky**

Would there be venue in the Western District of Kentucky?

Under the general venue statute, there is venue in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2). That standard would be met. This case is, at its core, about a 2021 horserace in which a horse was allegedly "doped." See Amended Complaint ¶¶ 5-37. And that race, the Kentucky Derby, was run in the Western District of Kentucky. See Part I.D.2.

Under the RICO special venue provision, there is venue wherever a defendant allegedly "transacts his affairs." 18 U.S.C. § 1965(a). That standard would also be met. The Defendants "transact[ed] their affairs" in the Western District of Kentucky, by allegedly entering a "doped" horse into a race there. See Amended Complaint ¶¶ 5-37.

Bottom line: one way or another, venue would be proper in the Western District of Kentucky.

**b. California**

Now take the Central District of California.

Under the general venue statute, there is venue in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1).

The Defendants check that box. One of the Defendants (Robert A. Baffert) is a resident of the Central District in California. See Amended Complaint ¶ 68. And one of the Defendants (Bob Baffert Racing Stables, Inc.) is incorporated in California, see Motion to Dismiss at 10, and that counts as the place of its residence for venue purposes.[10]

There would also be venue under the special RICO venue provision.

It provides for venue where a defendant "resides," 18 U.S.C. §

[10] Why? Because for venue purposes "[a] defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction," 28 U.S.C. § 1391(c), and there is personal jurisdiction over a corporation where it is incorporated. See Ford Motor, 592 U.S. at 358.

1965(a), and one of the Defendants, Robert A. Baffert, is a resident of the Central District of California. See Amended Complaint ¶ 68. The statute also provides for venue wherever a defendant "has an agent" or "transacts [its] affairs." 18 U.S.C. § 1965(a). The other Defendant, Bob Baffert Racing Stables, Inc., meets that standard. See Amended Complaint ¶ 68; see also id. at ¶¶ 125-130.

In short: venue would be proper in the Central District of California.

**B. The Transfer Factors**

Analyzing a potential transfer under Section 1404(a) is a two-step process, see Part III.A above, and the first step is now done: there would be personal jurisdiction and venue in either the Western District of Kentucky or the Central District of California. Each of those Districts is in play as a place where this case might be transferred.

The second step is "whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Jumara, 55 F.3d at 879 (cleaned up).

Twelve factors are generally considered in this analysis. See id. Six are "private interest" factors:

> [a] plaintiff's forum preference as manifested in the original choice; [b] the defendant's preference; [c] whether the claim arose elsewhere; [d] the convenience of the parties as indicated by their relative physical and financial condition; [e] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [f] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

Id. at 879 (cleaned up). The rest are "public interest" factors:

> [a] the enforceability of the judgment; [b] practical considerations that could make the trial easy, expeditious, or inexpensive; [c]

> the relative administrative difficulty in the two fora resulting from court congestion; [d] the local interest in deciding local controversies at home; [e] the public policies of the fora; and [f] the familiarity of the trial judge with the applicable state law in diversity cases.

Id. at 879-80 (cleaned up).[11]

**1. Plaintiffs' Forum Choice**

The first of the twelve factors: where the plaintiff chose to sue.

This choice should not be lightly pushed aside. See id. at 879. But it is not dispositive. See Tischio v. Bontex, Inc., 16 F. Supp. 2d 511, 521 (D.N.J. 1998); Am. Tel. & Tel. Co. v. MCI Commc'ns Corp., 736 F. Supp. 1294, 1306 (D.N.J. 1990).

Here, the Plaintiffs' choice carries less weight than it might otherwise.

First, this case is brought as a nationwide class-action. It aims to include everyone in the United States who bet on the 2021 Kentucky Derby and would have won their bets but for the "doping." See Amended Complaint ¶ 156.

In cases that seek to pull in class members from across the country, the plaintiffs' choice of a particular forum commands less deference.[12] After all, the named Plaintiffs hope their

---

[11] These factors are not exclusive. See Jumara, 55 F.3d at 879 ("courts have considered many variants of the private and public interests").

[12] See, e.g., Perrong v. Timeshare Help Source, LLC, 2022 WL 5221331, at *5 (E.D. Pa. Oct. 5, 2022) ("the plaintiff's choice merits less deference in a class action suit"); Geraci v. Red Robin Int'l, Inc., 2019 WL 2574976, at *5 (D.N.J. June 24, 2019) ("Courts within the Third Circuit follow the majority view that less deference is generally afforded to the class representative's choice of forum"); Smith v. HireRight Solutions, 2010 WL 2270541, at *3 (E.D. Pa. June 7, 2010) (collecting cases); see also 3 Newberg and Rubenstein on Class Actions § 10:36 (6th ed.) ("courts typically give less weight to the plaintiff's choice of forum in class action suits"); see generally Koster v. (Am.) Lumbermens Mut. Cas. Co., 330 U.S.

case will eventually branch out to include many other people. But for those other people, the forum that was initially chosen may or may not be an especially appropriate one.

Second, a plaintiff's decision to sue in a particular district caries less weight when that district has "little connection with the operative facts of the lawsuit." U.S. Fire Ins. Co. v. World Trucking, Inc., 2008 WL 413310, at *2 (D.N.J. Feb. 13, 2008) (quoting Tischio, 16 F.Supp.2d at 521); see also Am. Tel. & Tel. Co., 736 F. Supp. at 1306; Montgomery v. Schering-Plough Corp., 2007 WL 614156, at *2 (E.D. Pa. Feb. 22, 2007).

That is this case.

The Plaintiffs' essential allegation is of a conspiracy orchestrated by a California-based horse trainer, and centered on running a "doped" horse in the 2021 Kentucky Derby. See Amended Complaint ¶¶ 1-37, 68, 73-137.

New Jersey is simply next-to-nowhere in the alleged conspiracy.

One way to see the point is to note that New Jersey is so far afield that it is not clear that this Court has personal jurisdiction and venue.

As to personal jurisdiction, the discussion is below at Part III.B.5.

As to venue, none of the Defendants reside in New Jersey, see Amended Complaint ¶ 68; Motion to Dismiss at 7, and none of the relevant events took place here. See id. This makes establishing venue in New Jersey a hard uphill climb. See 28 U.S.C. § 1391(b).

True, the complaint says the Kentucky Derby was simulcast around the country, including in New Jersey. See Amended Complaint ¶ 75. But if where things are broadcast by someone other than the defendant could overcome otherwise-applicable venue rules, there would not be much left of those rules. Venue rules are designed, among other things, to ensure that local communities,

---

518, 524 (1947) ("where there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the . . . cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened").

acting through local juries, will often be the ones to pass on events that took place locally. See 28 U.S.C. § 1391(b)(2). That principle is basic to our justice system,[13] and there is no reason to think it melts away whenever what happens locally is broadcast nationally.

Venue rules have also long been concerned with ensuring that defendants are not treated unfairly, by being sued in places that are essentially random. That concern is reflected in today's general venue statute, see 28 U.S.C. § 1391(b)(1)-(2), and has been baked into venue law since the Nation's first venue statute. See Judiciary Act of 1789, 1 Stat. 73 § 11 (1789) ("[N]o civil suit shall be brought . . . against an inhabitant of the United States . . . in any other district than that whereof he is an inhabitant . . . ."); see also Peter L. Markowitz, Lindsay C. Nash, Constitutional Venue, 66 Fla. L. Rev. 1153, 1162-64 (2014). But if place-of-broadcast was enough, venue might well be proper anywhere, and the law's fine-spun protections for defendants would essentially give way.

In sum: the Plaintiffs' choice to sue in New Jersey is entitled to less-than-the-usual weight in the transfer analysis, because this is a putative nation-wide class action and because this is case is far removed from New Jersey --- indeed, so far removed that personal jurisdiction and venue are questionable here.

**2. Defendants' Forum Preference**

---

[13] The idea that local juries will often have a critical role to play in resolving local disputes long predates the Founding. See, e.g., Steven A. Engel, The Public's Vicinage Right: A Constitutional Argument, 75 N.Y.U. L. Rev. 1658, 1673-1680, n. 78-82 (2000) (collecting sources). Not surprisingly, this idea grew in the same soil as the principle that juries were expected to actively go out and gather information about relevant events. See generally John Marshall Mitnick, From Neighbor-Witness to Judge of Proofs: The Transformation of the English Civil Juror, 32 Am. J. Legal Hist. 201 (1988). After all, it is hard for a juror who lives in one place to seek out information about events in another place. But even after more modern understandings of the jury's function began to develop, see, e.g., Mylock v. Saladine, 96 Eng. Rep. 278, 278 (K.B. 1764) ("[a] juror should be as white paper, and know neither plaintiff nor defendant, but judge of the issue merely as an abstract proposition upon the evidence produced before him"), the focus on local adjudication of local matters has remained a basic part of our law. See 28 U.S.C. § 1391(b)(2).

The next factor is a defendant's forum preference, see Jumara, 55 F.3d at 879, and the Defendants here say they want this case to stay in New Jersey. See Letter (January 10, 2024).

A defendant's bare preference for a particular forum does not usually get much weight in a transfer analysis. See, e.g., N. Am. Commc'ns, Inc. v. Eclipse Acqui Inc., 2018 WL 651795, at *6 (W.D. Pa. Jan. 31, 2018); Leatherman v. Cabot Oil & Gas Corp., 2013 WL 1285491, *3 (E.D. Pa. 2013); Coppola v. Ferrellgas, Inc., 250 F.R.D. 195, 198 (E.D. Pa. 2008).[14]

So too here.

The allegations in this case have little to do with New Jersey. See Part III.B.1. And the Defendants are California residents who do not themselves seem to have any meaningful links to New Jersey. See Motion to Dismiss at 7; Amended Complaint ¶ 68.

Moreover, the Defendants oppose transfer, in part, so that they can stay in New Jersey --- so as to argue here that this case should be dismissed for lack of New Jersey personal jurisdiction and New Jersey venue. See Letter (January 10, 2024).

But if there is a problem with the Plaintiffs bringing their case here because there is no New Jersey jurisdiction or venue, that is a reason to fix the problem, by transferring the case to a district where there is jurisdiction and venue.[15] It is not, as the Defendants would have it, a reason to end the case, by keeping it in New Jersey only to dismiss it.

Why? Because cases should generally be resolved on their merits, not cut off on procedural grounds before they get going.[16] And one implication of that overarching principle is

---

[14] Note that if a defendant prefers transfer based on certain particular concerns, like the unavailability of a witness in a given forum, that can matter a good deal in the analysis. But those sorts of concerns are assessed in different parts of the transfer analysis. See Jumara, 55 F.3d at 879.

[15] As noted, there would be personal jurisdiction in Kentucky and California. See Part III.A.1.

[16] See In re SCH Corp., 569 F. App'x 119, 122 (3d Cir. 2014) (describing "guiding principle that matters should generally be decided on their merits when that is possible"); see also Wiggins v. MacManiman, 698 F. App'x 42, 43 (3d Cir. 2017) ("We have long recognized the policy of law which favors disposition

that where jurisdiction is doubtful in one court, that is a reason to transfer the case to a court where jurisdiction is solid --- not, as the Defendants would have it, a reason to keep the case where it was filed, just long enough to dismiss it for lack of jurisdiction.[17]

Bottom line: the Defendants prefer staying in New Jersey, but their preference does not command much deference. This case has little to do with New Jersey, and neither do the Defendants. And the Defendants, in part, want to keep this case in New Jersey to argue that it does not belong here.[18]

### 3. Where Claims Arose

The next factor is where the underlying claims arose. Jumara, 55 F.3d at 879.

This factor points "in favor of transfer to the forum where the

---

of litigation on its merits.") (cleaned up); Goodher v. United States, 2005 WL 1785305, at *3 (D.N.J. July 26, 2005) ("in the broadest sense the law always favors the resolution of disputes on the merits").

[17] See Pippett v. Waterford Dev., LLC, 166 F. Supp. 2d 233, 239 (E.D. Pa. 2001) ("When personal jurisdiction is questionable in one state, and a more appropriate forum exists elsewhere, transfer is proper."). Some other cases: Arunachalam v. Pazuniak, 2015 WL 1249877, at *4 (N.D. Cal. Mar. 17, 2015) ("the public interest is served when a case is transferred from a forum where there is a difficult question of personal jurisdiction to a district in which personal jurisdiction is clearly established.") (cleaned up); Spherion Corp. v. Cincinnati Fin. Corp., 183 F.Supp.2d 1052, 1059 (N.D. Ill. 2002) (similar). Two other cases: Schwilm v. Holbrook, 661 F.2d 12, 14-16 (3d Cir. 1981) (abuse of discretion for district court to deny plaintiff's transfer motion, made late in the case, in part because jurisdictional questions arose as to the transferor court's jurisdiction), and Boomer Dev., LLC v. Nat'l Ass'n of Home Builders of the United States, 2016 WL 6563673, at *5 (M.D. Pa. Nov. 4, 2016) (in another transfer context, stating "[i]t is longstanding policy in the Third Circuit to transfer cases to a proper forum when personal jurisdiction is in doubt").

[18] The Defendants have stated that if this case is to be transferred, they would want it transferred to the Western District of Kentucky. See Letter (January 18, 2024).

majority part of events and omissions from which the [p]laintiff's claims arise, took place." Snack Joint LLC v. OCM Group USA, NJ, Inc., 2021 WL 4077583, at *8 (D.N.J. Sept. 8, 2021) (cleaned up); see also Hassett v. Beam Suntory, Inc., 2019 WL 6888406, at *4 (D.N.J. Dec. 18, 2019) ("this factor weighs in favor of transfer to the [the forum] where the majority part of events and omissions from which Plaintiff's claims arise, took place"); Karimi v. Deutsche Bank Aktiengesellschaft, 2022 WL 1001566, at *5 (D.N.J. Mar. 31, 2022) ("The inquiry hinges on which forum contains the center of gravity of the dispute, its events, and transactions.") (cleaned up).

New Jersey is not where the claims in this case emerged. Indeed, there is nothing in the Plaintiffs' allegations that suggest any relevant acts occurred in New Jersey.

Accordingly, this factor favors transfer from New Jersey. See Janosko v. United of Omaha Life Ins. Co., 2016 WL 4009818, at *3 (D.N.J. July 25, 2016) (this factor favors transfer where the claim arose out of acts in a few different states but "no part of [p]laintiff's case occurred in New Jersey"); see also McNulty v. J.H. Miles & Co., 913 F. Supp. 2d 112, 119 (D.N.J. 2012); cf. Peller v. Walt Disney World Co., 2010 WL 2179569, at *2 (D.N.J. May 28, 2010).

If not New Jersey, where did the claims arise? The Western District of Kentucky. The Plaintiffs' claims largely relate to the 2021 Kentucky Derby, which took place in the Western District. See Amended Complaint ¶¶ 81-121. All the named plaintiffs allegedly placed bets on that race, see id. ¶¶ 7-36, and the Plaintiffs' proposed class includes only 2021 Derby bettors. See id. at ¶ 156.[19]

In sum: the third factor favors transfer from New Jersey to the Western District of Kentucky.

**4. Parties' Convenience**

The next three factors concern the convenience of the parties.[20]

---

[19] Any links to California are much less substantial than those to Kentucky. There are no allegations, for example, that a horse was "doped" by the Defendants in California and then entered into the Kentucky Derby.

[20] These factors are: "[4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that

These factors are "essentially irrelevant" here. Care One, LLC v. Nat'l Lab. Rels. Bd., 2023 WL 4156859, at *4 (D.N.J. June 23, 2023).

No party has suggested it would be financially strained if it had to litigate in any of the various in-play districts. And no party has suggested there are records or potential witnesses that would be available in one district, but not in another.[21]

### 5. Judgment Enforceability

The next factor[22] relates to whether any judgment that might be entered is more readily enforceable in one district or another. Jumara, 55 F.3d at 879.[23]

This factor is important here, because personal jurisdiction over the Defendants in New Jersey is a potentially close question.[24]

---

the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." Jumara, 55 F.3d at 879 (cleaned up).

[21] At one point, the Plaintiffs contend that witness inconvenience favors transfer to California over Kentucky. See Letter (January 11, 2024). But what mainly (if not entirely) matters under Third Circuit law is witness unavailability, not witness inconvenience. See Jumara, 55 F.3d at 879.

[22] This is the first of the six "public interest" factors, concerned primarily with the interests of justice rather than the interests of the parties. See Jumara, 55 F.3d at 879.

[23] Analysis of this factor sometimes turns on the location of the defendant's assets, as that may impact the plaintiff's ability to collect on a judgment. See, e.g., Pritchett v. Alternative Bearings Corp., 2020 WL 2847865, at *7 (M.D. Pa. June 2, 2020); Yacovella v. Apparel Imports, Inc., 2015 WL 5098009, at *9 (D.N.J. Aug. 31, 2015); Klatte v. Buckman, Buckman & Reid, Inc., 995 F. Supp. 2d 951, 954 (D. Minn. 2014). Here, no party has raised such concerns.

[24] There can be no general jurisdiction over the Defendants in New Jersey because there are no allegations they are domiciled here. See generally Goodyear, 564 U.S. at 924. And whether there is specific jurisdiction in New Jersey, at least before any jurisdictional discovery might be undertaken, see Part

Why does this matter?

Because if this case stays in New Jersey and judgment is entered for the Plaintiffs, the ultimate enforceability of that judgment might be open to question. An appellate court could determine that, looking back, there was not personal jurisdiction here over the Defendants. And that would make it impossible to enforce any judgment that had been entered. See, e.g., Kulko v. Superior Ct. of Cal. In & For City & Cnty. of San Francisco, 436 U.S. 84, 91 (1978) ("It has long been the rule that a valid judgment imposing a personal obligation or duty in favor of the plaintiff may be entered only by a court having jurisdiction over the person of the defendant").

Would this risk materialize in California or Kentucky? Highly unlikely. There appears to be personal jurisdiction over the Defendants in those places. See Part III.A.1 above.

The risk to eventual judgment-enforcement in New Jersey weighs in favor of transfer of this case from New Jersey (where jurisdiction is less solid) to California or Kentucky (where it is more solid). See Arunachalam, 2015 WL 1249877, at *4; Spherion Corp., 183 F. Supp. 2d at 1059; Pippett, 166 F. Supp. 2d at 239.

### 6. Practical Considerations

The next factor focuses on "practical considerations that could make the trial easy, expeditious, or inexpensive[.]" Jumara, 55 F.3d at 879.

This factor weighs heavily in favor of transfer from New Jersey to Kentucky.

First, litigating in New Jersey will likely be less "expeditious" and "inexpensive," Jumara, 55 F.3d at 879, than proceeding in Kentucky (or, for that matter, in California).

In Kentucky and California, there would almost surely be personal jurisdiction. See Part III.A.1.

In New Jersey, that is not crystal clear. See footnote 24.

---

III.B.6 below, turns on plainly tenuous connections between the underlying allegations in this case and New Jersey. See Defendants' Reply Memorandum in Support of Motion to Dismiss the Amended Complaint at 2-9 (developing this argument).

Because it is not, and because one of the Defendants is a corporation, Third Circuit law would tilt in favor of giving the Plaintiffs jurisdictional discovery. See Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 336 (3d Cir. 2009); Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997); Caduceus, 2024 WL 303845, at *6-7; Prestan Products LLC v. Innosonian Am., LLC & Innosonian, Inc., 2024 WL 278985, at *3 (D.N.J. Jan. 25, 2024).

Such discovery would bake in a layer of cost and time that would not be part of the mix in Kentucky or California.

Second, "judicial economy and the overarching interests of justice," Care One, 2023 WL 4156859, at *5, cut strongly in favor of transfer to Kentucky.

The reason: the Western District of Kentucky has already resolved, on the merits, a case that is closely similar to this one. See generally Part I.D (describing the Kentucky case).

The Kentucky case, like this one, "ar[ose] from the disqualification of Medina Spirit as the winner of the 2021 Kentucky Derby due to a failed drug test." Memorandum and Order, Mattera v. Baffert, Case No. 3:22-cv-156-DJH (W.D. Ky. July 20, 2023) at 1 ("Kentucky Opinion"); see Amended Complaint ¶¶ 5; 156.

The Kentucky plaintiffs, who were bettors (as here), sued the Defendants here for several causes of action related to an alleged entry of an ineligible, "doped" horse. See Kentucky Opinion at 1; Amended Complaint ¶¶ 6-37.

The Kentucky plaintiffs bet on the 2021 Kentucky Derby, and so did the Plaintiffs here. See id. at ¶¶ 2, 6-37; see also Complaint ¶¶ 133, 143, Mattera, Case No. 3:22-cv-156-DJH.

And the Kentucky plaintiffs (as here) allegedly lost money because the "doped" horse won the race. See Kentucky Opinion at 3-4; Amended Complaint ¶ 6.

There are, in short, fundamental similarities between the Kentucky case and this lawsuit.

Given the work that has already been invested in the Kentucky case, it would save a good deal of judicial time if this case were sent to Kentucky.

And returning to the same decision-maker is not just a matter of

efficiency. Having the same court handle both cases would help ensure that like cases --- and these are very much like cases --- are treated alike. That is a fundamental goal of our justice system. See generally Epic Sys. Corp. v. Lewis, 584 U.S. 497, 510 (2018) ("like cases should generally be treated alike"); cf. D'Ambola v. Daily Harvest, Inc., 2023 WL 3720888, at *7 (D.N.J. May 30, 2023) ("preventing inconsistent decisions heavily weighs in favor of transfer"); Simmens v. Coca Cola Co., 2007 WL 2007977, at *2-3 (E.D. Pa. July 5, 2007) (similar).[25]

**7. Court Congestion**

The next factor is "the relative administrative difficulty in

[25] Three things. First, note that courts often transfer cases "when a party has previously litigated a case involving similar issues and facts before the transferee court." Allied Erecting & Dismantling Co. v. United States Steel Corp., 2016 WL 7442397, at *9 (W.D. Pa. Nov. 22, 2016), report and recommendation adopted sub nom. Allied Erecting & Dismantling Co. v. United States Steel Corp., 2016 WL 7404586 (W.D. Pa. Dec. 22, 2016); see also D2L Ltd. v. Blackboard, Inc., 671 F. Supp. 2d 768, 784 (D. Md. 2009) (collecting cases); Wheeling-Pittsburgh Steel Corp. v. United States Envt'l Protection Agency, 1999 WL 111459, at *4 (E.D. Pa. Mar. 3, 1999) (because one of the parties had already litigated a similar claim in the transferee forum, "a court in that district will likely be familiar with the facts of the case[,]" and this assists with "judicial economy" and "supports transferring the case"); cf. AMG Indus. Corp. v. Lyon, 2005 WL 3070922, at *4 (W.D. Pa. Nov. 16, 2005); Sovereign Bank v. BJ's Wholesale Club, Inc., 2005 U.S. Dist. LEXIS 7290 (E.D. Pa. Apr. 25, 2005) (same); Schiller-Pfeiffer, Inc. v. Country Home Prods., 2004 U.S. Dist. LEXIS 24180 (E.D. Pa. Dec. 1, 2004); CIBC World Markets, Inc. v. Deutsche Bank Sec., Inc., 309 F. Supp. 2d 637, 651 (D.N.J. 2004); Lawrence v. Xerox Corp., 56 F. Supp. 2d 442, 454 (D.N.J. 1999). Second, note that the Kentucky case was presided over by United States District Judge David J. Hale. It seems possible that under the Western District of Kentucky's Local Rules, see Joint Ky. Civ. Prac. R. 40.1(b), this case, if transferred to Kentucky, would also be handled by Judge Hale. Third, recall that there were two lawsuits filed in California that are also closely similar to this one. But those were voluntarily dismissed by the plaintiffs before the California court made any substantive rulings. See Part I.C. As between New Jersey, California, and Kentucky, a federal court has invested in reaching the merits in only one place, Kentucky.

the two fora resulting from court congestion." Jumara, 55 F.3d at 879.

Courts often assign relatively little weight to this factor or find that it is neutral. See, e.g., Care One, 2023 WL 4156859, at *6; Intell. Ventures I LLC v. Altera Corp., 842 F. Supp. 2d 744, 760 (D. Del. 2012); Yocham v. Novartis Pharms. Corp., 565 F. Supp. 2d 554, 560 (D.N.J. 2008); Clark v. Burger King Corp., 255 F. Supp. 2d 334, 339 (D.N.J. 2003); Textron Innovations, Inc. v. The Toro Co., 2005 WL 2620196, at *3 (D. Del. Oct. 14, 2005); see also 15 Fed. Prac. & Proc. Juris. (Wright & Miller) § 3854 n.16 (4th ed. 2023).

The Defendants make no argument on this factor. For their part, the Plaintiffs contend this factor leans in favor of transfer to California. See Letter (January 11, 2024) at 2. But there is nothing substantial enough in the record to show this case would be dealt with more efficiently by a California court.

The Court's conclusion: this factor is neutral here. It does not support any particular outcome.

**8. Local Interest**

The next factor is the "local interest in deciding local controversies at home." See Jumara, 55 F.3d at 879.

This factor tilts strongly in favor of transfer from New Jersey to Kentucky. This case, as noted, has little connection to New Jersey. See Part III.B.1. And it is strongly linked to Kentucky, much more so than California. See id.

**9. Public Policies**

The next factor concerns any potentially disparate public policies between the various fora. See Jumara, 55 F.3d at 879-880. No party has identified any such policies. So this factor bears no weight here. See Care One, 2023 WL 4156859, at *7.

**10. Familiarity With State Law**

The next factor: "the familiarity of the trial judge with the applicable state law in diversity cases." Jumara, 55 F.3d at 879-880.

Although this case involves some state law claims, see Amended Complaint ¶¶ 205-220, the parties do not press any arguments related to this factor.

For example, they do not suggest that the governing body of state law is so technical or so unusual that a court's pre-existing familiarity with it might make a practical difference.

Accordingly, this factor is neutral here. It does not cut in favor of one outcome or another.

**C. Conclusion**

In this Part, the Court has assumed that venue is proper in New Jersey and therefore conducted a Section 1404(a) analysis.

The Court's conclusion: balancing all the factors, this case should be transferred to the Western District of Kentucky.

First, the case "might have been brought" there. There is personal jurisdiction and venue in the Western District. See Part III.A.

Second, the various factors that must be considered generally favor transfer from New Jersey. This case, simply put, has virtually nothing to do with New Jersey. See Part III.B.1. And the remoteness from New Jersey is to the point that personal jurisdiction is questionable here --- with implications for both cost, see Part III.B.6 (discussing jurisdictional discovery), and the certainty of being able to enforce any eventual judgment. See Part III.B.5.

It is true that the Plaintiffs chose to bring suit in New Jersey. But that is less meaningful than is typically the case. This is a putative nationwide class action that has little to do with the state.

Third and finally, the factors that must be assessed affirmatively support transfer to Kentucky. That is where the claim arose. See Part III.B.3. And the federal court in Kentucky has recently resolved a case that is factually similar to this one and involves the Defendants in this case. See Part III.B.6.

In short: under Section 1404(a), this case should be transferred to the Western District of Kentucky.

**IV. Transfer Where There Is Not Venue: The Section 1406(a) Analysis**

Next, the Court assumes New Jersey is not a proper venue for this lawsuit, and accordingly assesses whether to transfer the

case under Section 1406(a).

In Section 1406(a) cases, the Third Circuit has not laid down a sharply-defined set of transfer factors to consider. See Paltalk Holdings, 2017 WL 4570301, at *2 n.2.

Against this backdrop, some district courts in the Third Circuit have analyzed possible Section 1406(a) transfers using the Jumara factors that are in play under Section 1404(a). See, e.g., Am. High-Income Trust, 2002 WL 373473, at *4.

Others have not. See, e.g., Adams, Nash & Haskell, 2020 WL 1305620, at *4; Dance, 2018 WL 3350392, at *3; Gottlieb, 2006 WL 2591069, at *3 8, 2006); see also Kneuven v. Lysten, LLC, 2023 WL 7565903, at *2 (W.D. Pa. Oct. 17, 2023), report and recommendation adopted sub nom. Knueven v. Lysten, LLC, 2023 WL 7630279 (W.D. Pa. Nov. 14, 2023).

There is no reason here to choose between these two approaches, and the Court does not attempt to.[26]

---

[26] There are arguments on both sides of any debate in this area. On the one hand, the standard for a Section 1406(a) transfer should perhaps be harder to meet than the standard for a Section 1404(a) transfer. Congress chose emphatic language in Section 1406(a). See 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong . . . district shall dismiss, or if it be in the interest of justice, transfer such case . . . .") (emphasis added). That might suggest a preference for dismissal over transfer that is not in Section 1404(a). See 28 U.S.C. § 1404(a) ("may transfer") (emphasis added). On the other hand, maybe the standard for a Section 1406(a) transfer should be easier to meet than the standard for a Section 1404(a) transfer. A federal trial court has a "virtually unflagging" obligation to exercise the power it has been given to resolve a case. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976). Therefore, the argument goes, when a court has venue, there is an implicit counterbalance on the scale, working against a transfer. But if --- even with that --- a certain cluster of facts is weighty enough to support transfer from a court with venue, then it should follow a fortiori that those same facts are weighty enough to support transfer from a court without venue. After all, if the weight is enough to overcome the counterbalance in the first situation, then it should be enough in the second situation, where no such counterbalance is in play.

The reason: transfer to the Western District of Kentucky is appropriate under any approach, because the argument for transfer is overwhelming.

The alleged facts in this case simply have nothing (or virtually nothing) to do with New Jersey. The claims here arose in Kentucky.

Moreover, a Kentucky federal judge has recently resolved a case that is similar to this one. That case covered the same basic facts. And it included some of the same defendants as here.

In addition, the Defendants have no meaningful connections to New Jersey. And the Plaintiffs fare little better. Only one Plaintiff (out of 30) is tied to New Jersey, and, in any event, the Plaintiffs are aiming to certify a large nationwide class.

Furthermore, if the Court were to keep this case in New Jersey for now, jurisdictional discovery could well come next. That would cost the parties time and money. And jurisdictional discovery would likely not be needed in Kentucky, where jurisdiction is more straightforward.

Finally, look down the road. Consider what will happen if the Court keeps this case in New Jersey for now, jurisdictional discovery is conducted and wraps up --- and the Court is then asked to definitively close on questions of jurisdiction.

At that point, there would be two possibilities.

First, the Court might decide jurisdiction is proper.

That would almost inevitably be a close call, a determination that there is just enough connection to New Jersey to nudge the case over the jurisdictional line. But a close call would import risk into this case --- the risk that any judgment would not ultimately prove enforceable. That risk would not be meaningfully present in Kentucky, where jurisdiction would be much more solid.

A second possibility: after jurisdictional discovery, the Court might decide it does not have jurisdiction.

At that point, the Court might well transfer the case. See Barber v. DePuy Synthes Prod., Inc., 2021 WL 3076933, at *2 (D.N.J. July 21, 2021); Pac. Emps. Ins. Co. v. AXA Belgium S.A., 785 F. Supp. 2d 457, 475 (E.D. Pa. 2011); D'Jamoos v. Pilatus Aircraft Ltd., 2009 WL 3152188, at *2 (E.D. Pa. Oct. 1, 2009);

see also Britell v. United States, 318 F.3d 70, 73 (1st Cir. 2003). But that transfer would almost surely be to the Western District of Kentucky. Time and money would have been spent --- only for the case to go then where it could go now.

To be sure, if after jurisdictional discovery the Court decides it does not have jurisdiction, it might dismiss the case. But that dismissal would likely be without prejudice. See EF Operating Corp. v. Am. Bldgs., 993 F.2d 1046, 1049 (3d Cir. 1993); Kennedy v. Hoegh Autoliners Shipping PTE Ltd., 2021 WL 7904032, at *9 (D.N.J. Feb. 17, 2021) (same), report and recommendation adopted, 2021 WL 7841701 (D.N.J. May 24, 2021).

The Plaintiffs would then be able to choose another forum. They might pick the Western District of Kentucky. But why not, then, transfer the case there now?

Or the Plaintiffs might pick another district, perhaps one as unconnected as New Jersey to the underlying Kentucky-focused events at issue. That would likely set off another round of procedural litigation, and getting to the merits would, again, be pushed off into the future.

Bottom line: under Section 1406(a), the reasons to transfer this case to the Western District of Kentucky are overwhelmingly strong.

## V. There Is No Need To Decide Whether There Is Venue

To this point, the Court has concluded that this case should be transferred to the Western District of Kentucky --- whether there is venue in New Jersey (such that Section 1404(a) applies) or whether there is not venue in New Jersey (such that Section 1406(a) applies).

Is there any need to determine whether there is venue in New Jersey in this case?

The Court's answer: no.

In analogous scenarios, other courts have not decided the venue question. See, e.g., Moore v. Magiera Diesel Injection Servs., Inc., 2019 WL 2502029, at *6 (N.D. Ill. June 17, 2019) (transferring prior to deciding venue); cf. Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc., 2009 WL 1845236, at *8 (E.D. Pa. June 26, 2009) (same).

And that approach is consistent with the general principle that

a federal court has leeway to "choose among threshold grounds for denying audience to a case on the merits." Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007) (quoting Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 585 (1999)).

Here, the first "threshold ground" is transferring the case without determining whether there is venue. And the second "threshold ground" is transferring the case and determining whether there is venue.

The Court is permitted to choose between these two approaches. See id.

And choosing the first approach --- the approach of not definitively determining whether there is venue --- makes sense from the perspective of judicial economy and avoiding unnecessary legal questions. See generally Ruhrgas AG, 526 U.S. at 586 (focusing on "judicial economy" and "restraint" as "overriding" considerations in this context).

In addition, there is an affirmative reason here not to decide the venue question. Doing so may require the Court to decide constitutional questions. This is because the venue analysis under the RICO special venue provision, see Part III.A.2, may require an analysis of the constitutional limits on personal jurisdiction. See Peters Broad. Eng'g, Inc. v. 24 Cap., LLC, 40 F.4th 432, 439 (6th Cir. 2022); PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 71 (2d Cir. 1998). And reaching such constitutional questions should be avoided where possible. See generally Lyng v. Nw. Indian Cemetery Protective Ass'n, 485 U.S. 439, 445 (1988); see also Caduceus, 2024 WL 303845, at *6-7 (applying this general principle to the issues that would be in play here); Prestan Products, 2024 WL 278985, at *3 (same).

To be sure, it may sometimes make sense to decide venue questions before transferring. This is because if venue was proper in the transferor court, "federal courts in the district to which the case has been transferred . . . must apply the law of the transferor state." Lafferty, 495 F.3d at 76. By contrast, if venue was improper in the transferor court, "transferee courts generally apply the substantive law they would have applied had the action been brought there initially." Id. at 77.

But here, there are likely no knock-on choice of law effects. As to the Plaintiffs' state law claims, which are the relevant ones from a potential choice of law perspective, those relate to

conduct that took place in Kentucky and that allegedly injured bettors throughout the United States. In such a case, a federal court sitting in New Jersey would apply New Jersey choice of law rules, see Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941), and under those rules would be highly likely to apply Kentucky substantive law. See In re Accutane Litig., 235 N.J. 229, 259 (2018). And so too would a Kentucky federal court applying Kentucky choice of law rules. See Osborn v. Griffin, 865 F.3d 417, 443 (6th Cir. 2017) ("Kentucky courts have an extremely strong . . . preference for applying Kentucky [substantive] law[.]").[27]

In short, down-the-road choice of law implications may sometimes suggest that a court should decide whether it has venue before transferring a case. But those are not live issues here.

Bottom line: this litigation should be transferred to the Western District of Kentucky under either Section 1404(a) or Section 1406(a) and there is no reason to specify the Section under which the transfer will take place.

* * *

This case is transferred to the Western District of Kentucky.

IT IS on this 20th day of February, 2024, so **ORDERED**.

Michael E. Farbiarz, U.S.D.J.

---

[27] At least one court has held that, where there are likely no choice of law implications riding on a determination of venue, transfer prior to deciding venue is proper. See, e.g., Moore, 2019 WL 2502029, at *6.